## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Tidewater Builders Ass'n et al.

v.

City of Virginia Beach

April 15, 1988

Case No. (Law) 86-LA-1828

By JUDGE H. CALVIN SPAIN

At a pre-trial hearing on January 29, 1988, the Court determined from argument and agreement of counsel that the pending case involved two substantive issues to be determined, to-wit: (1) whether the City of Virginia Beach[1] has inherent Constitutional, Statutory, and Charter power to impose a "Recovery Fee"; and (2) if so, whether the fee, as imposed through an Ordinance as enacted by the Virginia Beach City Council on January 6, 1986, as amended, has a reasonable basis for its formulation? It was conceded by all parties that the first issue as strictly a *matter of law* and that the second issue involved factual matters with extensive testimony. In the interest of judicial economy of time and to encourage all parties to prepare for trial (including the narrowing of the stated issues), the Court bifurcated the matters to be determined and set the *law matters* for trial on March 18, 1988, and the factual matters for trial on May 5, 1988. Argument was heard on March 18, 1988, the parties having submitted both pre- and post-trial briefs. The *law issue* is now ripe for decision.

---

[1] The City of Virginia Beach, Tidewater Builders Association, Inc., and Water Resources Recovery Fee are hereafter referred to as City, TBA, and Recovery Fee, respectively.

*Factual Background*

The City of Virginia Beach, a Virginia Municipal Corporation, is among the fastest growing urban areas in the United States. Since its incorporation, the City has had a compelling interest in supplying adequate municipal services to its citizens. Not the least of those services is *water*. The city is utterly without an independent water source (aside from certain deep wells in Southside, Virginia, used for emergencies). It has remained dependent upon the City of Norfolk for its water supply and treatment facilities. Thus, the City, being nothing less than a captive customer, and subject to the whims of politics and nature, presently has a contractual arrangement with the City of Norfolk to purchase *excess* water from its system. That contractual arrangement expires in 1993.

While the looming expiration date of the present water contract presumably would cause any thinking councilperson to spend sleepless nights, the City Council additionally has been and presently is faced with the dilemma that future growth projections into the twenty-first century clearly indicate that the City of Norfolk cannot possibly supply the future *water supply* needs of the city from its existing sources.

For a number of years, the City Council has studied the impending water disaster and its possible solutions. To its credit, the City Council has acted decisively! After discarding other options as cost prohibitive, technologically insufficient, impractical, environmentally unsound, or politically unrealistic, the Council opted to strike out on its own and secure a permanent independent water source, i.e., Lake Gaston. Although the Lake Gaston project involves a multi-municipal system, it has stirred up both logical and irrational objections from various governmental entities from whom cooperation is essential (counties, towns, and the State of North Carolina).

Despite the uncertainties that were to be faced and the many that still remain, the City Council, as a part of the implementation of the Lake Gaston project, adopted an Ordinance on January 6, 1986. The policy, purpose, and funding of the project were stated and implemented.

Such was done only after extensive public hearings and debate. Thereafter, TBA filed its Petition for Declaratory Judgment.

The bifurcated law issue to be presently decided by the Court comes on the Plaintiff's Motion for Summary Judgment.

*Question Presented: Whether the City of Virginia Beach Has the Inherent Constitutional, Statutory and/or Charter Power to Impose a "Recovery Fee"?*

Of necessity, Constitutional, Statutory, and Charter authorities and powers are interwoven and interdependent. The plaintiff has the burden of proof on its Motion for Summary Judgment and, to that end, has argued alternative theories.

The City must look to the Code of Virginia and its Charter for the authority/power to enact the Ordinance in question. Casting aside superfluous argument, academic examples and semantics, the Court addresses the points of law from the substance of the actual facts.

The Ordinance in question involves a *utility* problem. It does not involve parks, roads, etc. The authority/power of the City to enact the Ordinance is governed by Title 15.1 of the Code of Virginia, in general, and the City Charter, in particular, subject, of course, to the constraints of the Constitution of Virginia. Albeit, the principles set forth in case law concerning parks, roads, etc., may very well be applicable to the instant matter when considered in light of the proscriptions of the Constitution.

One matter that pervades all discussion is that of the viability of the so-called "Dillon's Rule." Suffice it to say, the parties are in agreement that the Dillon Rule is "alive and well" in Virginia. The court concurs in that agreement. The Dillon Rule, as correctly stated in the defendant's Supplemental Memorandum, limits the delegation of powers by the legislature to localities to:

> those granted in express words . . . those
> necessarily or fairly implied in, or incident
> to the powers expressly granted . . . those

> essential to the declared objects and purposes of the corporation -- not simply convenient, but indispensable. A.E.D. Howard, Commentaries on the Constitution of Virginia, Art. VII at 810 (footnote omitted).

The opportunity to repudiate that axiom of law was amply before the framers of the revised Constitution of Virginia. Such was clearly rejected by the General Assembly. *Hylton v. Prince William Co.*, 220 Va. 435, 440 (1979).

Much ado has been made by the Plaintiff and Defendant over the semantics of Chapter 15 of the Code of Virginia with respect to the express or implicit authority/power to enact the recovery fee. Reference is made specifically to Sections 15.1-175(a) and (k); Sections 15.1-1-172(h); 15.1-1240(9); 15.1-873; 15.1-875; and 15.1-292. In summary, from the aforementioned code sections and arguments of counsel, the Court concludes that the code sections amply and expressly authorize the City to establish, maintain, renew, enlarge, update, and finance a municipal water system or systems. (Districts apparently would provide for systems within a system.)

Arguments by Plaintiff that the code sections fail to provide authority for a *recovery fee* make for interesting intellectual debate. This is especially so in light of the express grant of additional powers by amendment to the Virginia Beach Charter by the General Assembly, effective January 1, 1977, that is, the inclusion of Sections 15.1-837 through 15.1-907 of the Code of Virginia. *See Virginia Beach Charter*, Section 2.01 (1977).

Plaintiff contends that the elective provisions of the Charter Act (*see* Title 15.1) grant no additional powers to the City. Not so! Perhaps inartfully stated, the principle has long been upheld by the Supreme Court that different sections of the code shall be read together to give meaning to what otherwise might appear to be conflicting provisions. It is further clear that the Charter Act applies only to cities and towns, purposefully omitting counties. *See Board of Supervisors of Henrico County v. Corbett*, 206 Va. 167 (1965). Thus the Court specifically finds that the referenced code sections and the City's Charter combined, if there be any doubt, empower the City to enact the recovery fee in principle.

The Court is nonetheless unimpressed with the Defendant's argument that Section 15.1-839 "trumps Dillon's Rule." Dillon's Rule can and should be made to harmonize where discretionary authority is clearly granted. *See Commonwealth v. Arlington County Board*, 217 Va. 558 (1977). Further, the Court is not impressed by the Defendant's assertion, albeit obliquely, that the additional powers granted to the City by the 1977 Charter amendment, gives the City "raw power" to impose any fee, in the guise of police powers, and thereby enshrine such fee from otherwise legitimate review by the Court. The Supreme Court properly addressed that contention when it stated:

> As the Board says, the police power is "elastic." But its stretch is not indefinite. If it were, no property right, indeed, no personal right could co-exist with it. *Board of Supervisors of James City County v. Rowe*, 216 Va. 128, 139 (1975).

Consequently, the Court concludes that the Dillon Rule is not applicable in the instant case where a fee was imposed for the purpose of recovering the capital costs incurred in securing a new water source, the construction of transmission lines with related equipment, and necessary expenses related to the project.

Having determined that inherent power exists, there are still matters to be addressed. The Court finds that the following needs to be determined; (1) is the recovery fee really an impermissible tax; (2) was the recovery fee imposed prematurely; (3) was the recovery fee applied indiscriminately; (4) did the recovery fee violate the direct benefit test; (5) did the recovery fee violate the rational nexus test; (6) does the imposition of the recovery fee violate a permissible time lapse between payment and benefit? The Court will consider these matters in chronological order.

Based upon all citations and argument of counsel, the Court finds that the recovery fee *is not* a prima facie impermissible tax. Plaintiff's counsel admitted that a fee, whatever you may call it, fairly apportioned among the beneficiaries is, in principle, a permissible charge. The Court has concluded that the City has the inherent

power to impose the recovery fee in principle and reiterates the same.

Prematureness and time lapse are matters of concern for the Court. The Charter and statutory powers clearly separate fees, etc., that go into special accounts from those placed in the General Fund. The recovery fee is deposited in a special escrow fund for the Lake Gaston project. The project is probably, if not in fact, unique in the Commonwealth of Virginia, for its engineering, political, and legal complexity. The General Assembly, in its infinite wisdom, has failed to address the water crisis that undoubtedly will befall the entire state. Without authority for intrabasin transfer, water districts, mandatory regional and statewide planning, the City has been forced to blaze its own path. The enabling code sections and City Charter grant discretionary decision-making power to the City Council. Where the City has seen fit to act, after studies, public hearings, and debate, by enacting various ordinances, including the recovery fee, a Court must give great weight to its legislative judgment. This is doubly so based upon the uncertainty as to the actual time before benefits may be derived from the Lake Gaston project. The Court *is not* prepared to find that the City is prohibited from accumulating funds in advance for costs to be incurred in consummating the Lake Gaston project. To the contrary, the Court is of the opinion that such discretion was granted to the City through its Charter and the referenced code sections. Thus, the Court will follow the Supreme Court's holding in *Town of Narrows v. Clear-View Cable TV, Inc.,* 227 Va. 272, at 280 (1984):

> Municipal corporations are prima facie the sole judge of the necessity and reasonableness of their ordinances . . . .

The Court will permit additional testimony on this matter, as the parties may be advised, at the evidentiary hearing on May 5, 1988, with respect to the actual reasonableness of the time lapse.

The rational nexus test gives the Court little problem. It finds no violation of the same.

The indiscriminate application and direct benefits tests are different matters. By their very nature, they are interwoven. They also require direct evidence of logical reason and methodology for determination by the Court. At this point, the Court does not have the necessary facts, *i.e.*, evidence, to rule. These matters are reserved for the evidentiary hearing on May 5, 1988.

For all the foregoing reasons, the Plaintiff's Motion for Summary Judgment is denied, subject to reservations as heretofore set forth with respect to the presentation of certain evidence and renewal of the Motion as the plaintiff may be advised.