## Richmond

TOWN OF NARROWS

v.

CLEAR-VIEW CABLE TV, INC.

Record No. 811452.

April 27, 1984.

Present: All the Justices.

*James E. Cornwell, Jr. (Warren, Cornwell and Gibb, P.C.* on brief), for appellant.

*Gary C. Hancock (Thomas J. McCarthy, Jr.; Samuel D. Campbell; Benjamin R. Gardner; J. Livingston Dillow; Gilmer, Sadler, Ingram, Sutherland & Hutton; Gardner & Gardner; Dillow & Stafford,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This appeal stems from a municipality's revocation of a franchise granted the operator of a community antenna television (CATV) system.

In 1976, appellant Town of Narrows, by appropriate ordinance, granted a 10-year franchise to appellee Clear-View Cable TV,

Inc., to operate a CATV system in the Town. Because of citizen complaints about the quality of service rendered by Clear-View, the Town Council called a special meeting and held a public hearing in September of 1980 to consider terminating the franchise. Following the meeting, Council unanimously adopted an ordinance revoking the franchise "immediately."

■ Because Clear-View failed to cease operations, the Town instituted the present proceeding four days after Council's action by filing a petition for a writ of mandamus, as authorized by Code § 15.1-315.[1] The Town asked that a writ be issued compelling Clear-View to comply with the franchise agreement and to cease immediately the use of public places of the Town. On the same day, Clear-View filed a bill for injunction in the trial court seeking an order staying the effect of the revocation ordinance. Within a month, the court entered an order restraining the Town from terminating the franchise. Following ore tenus hearings in January and February of 1981, the trial court denied the request for mandamus. We awarded the Town an appeal from the June 1981 final order in the mandamus proceeding.[2]

The 1976 franchise ordinance (hereinafter, the franchise), which renewed a prior franchise awarded Clear-View in 1968, allowed the company as "grantee" to use the streets and other public places of the Town for the company's poles, wires, conduits, cables and fixtures to construct, install, operate, and maintain a CATV service in and along the streets, alleys, and other public places in the Town. The franchise also provided, in part:

---

[1] As pertinent here, § 15.1-315 provides that "the circuit courts of the counties in which towns may be situated shall have jurisdiction by mandamus, according to the provisions of [Chapter 25 (§ 8.01-644 to -653) of Title 8.01], to enforce compliance by the . . . towns and by all grantees of franchises . . . with all the terms and contracts and obligations of either party, as contained in franchises."

[2] The Town's petition for appeal was granted in April of 1982. The trial court entered an order a month later in this case at the request of counsel for both parties. The order, noting a previous agreement to consolidate the mandamus and injunction proceedings, purported to consolidate the matters in the trial court *nunc pro tunc*, to supplement the record in this appeal to include pleadings in the injunction suit, and to consolidate the cases in this Court. Such action was beyond the trial court's authority. When, as here, the record on appeal has been transmitted in compliance with Rule 5:15 by the clerk of the trial court to the clerk of this Court and an appeal has been awarded, the record on appeal cannot be enlarged except upon our grant of a writ of certiorari under Code § 8.01-673. *Old Dominion Iron & Steel Corp.* v. *VEPCO*, 215 Va. 658, 212 S.E.2d 715 (1975). No request was made for certiorari. Thus, we will take no further notice of the injunction proceeding.

"*Sec. 9. Operation and Maintenance of the System. Complaints.*

(a) The grantee shall render efficient service, make repairs promptly, and interrupt service only for good cause and for the shortest time possible. Such interruptions, insofar as possible, shall be preceded by notice and shall occur during periods of minimum use of the system.

(b) The grantee shall maintain an office in Giles County, Virginia, which shall be open during all usual business hours, have a listed telephone, and be so operated that complaints and request for repairs or adjustments may be received at any time during usual business hours. During evening hours up to 11 PM and during weekends and holidays from 8AM to 11 PM that complaints may be received at an advertised telephone number.

. . . .

"*Sec. 15. Safety Requirements.*

. . . .

(d) The grantee shall maintain a force of one or more resident agents or employees at all times and shall have sufficient employees to provide safe, adequate, and prompt service for its facilities.

. . . .

"*Sec. 26. Forfeiture of Franchise.*

(a) In addition to all other rights and powers pertaining to the Town by virtue of this Franchise or otherwise, the Town reserves the right to terminate and cancel this Franchise and all rights and privileges of the grantee hereunder in the event that the grantee:

(1) Violates any provision of this Franchise or any rule, order, or determination of the Town or Town Council made pursuant to this Franchise, except where such violation . . . is without fault or through excusable neglect;

. . . .

(4) Attempts to evade any of the provisions of this Franchise or practices any fraud or deceit upon the Town;

(b) Such termination and cancellation shall be by ordinance duly adopted after thirty (30) days notice to the grantee and shall in no way affect any of the Town's rights under this Franchise or any provision of law. In the event that such termination and cancellation depends upon a find-

ing of fact, such finding of fact as made by the Town Council or its representative shall be conclusive. Provided, however, that before this Franchise may be terminated and cancelled under this Section, the grantee must be provided with an opportunity to be heard before the Town Council."

During the period 1976-1980, according to minutes of Council meetings, numerous complaints about the operation and maintenance of the cable system were received by Council members and the Town Manager. These complaints were communicated to C. Harry Anglin, president of Clear-View and a resident of Martinsville. The minutes also show that Anglin was invited to meet with Council to discuss the problems but did not always appear. The Town Manager reported to Council in February of 1977 "that all efforts to contact Mr. Anglin . . . have been exhausted as he will not answer correspondence, nor will he accept any telephone calls made to him." The minutes further reflect that Anglin failed to provide an advertised telephone number for night and weekend service, made "unfilled promises" about improving repair service and picture quality, and failed to provide sufficient service personnel.

Finally, in August of 1980, Council decided to hold a special meeting pursuant to Section 26 of the franchise to consider passage of an ordinance "terminating and cancelling" the franchise. Notice for a September 15 hearing stated the grounds for the revocation to be that Clear-View had "violated provisions of said Franchise through fault and willfully" and had "attempted to evade provisions of the Franchise or [had] practiced fraud or deceit upon the Town."

Anglin appeared without counsel at the public hearing, which was conducted by the Town Attorney. According to the transcript of the Council meeting, a number of Town residents voiced complaints about the performance of Clear-View. Anglin actively participated in the hearing by responding to many of the citizens' complaints and to questions from members of Council. The subjects covered by the complaints included Clear-View's failure to provide prompt repair service, to improve poor picture quality, to respond to requests for service, to provide an advertised telephone number for contact by subscribers with the company, and to fulfill promises for improved service. During the hearing, Anglin was

sarcastic, argumentative, and evasive when responding to legitimate questions.

At the conclusion of citizen participation, Anglin was afforded the opportunity to make additional comments to close the hearing. Following an executive session lasting 40 minutes, Council adopted the revocation ordinance, deciding Clear-View had violated the franchise. The ordinance provided, in part, that:

> "Council . . . finds the following facts after public hearing:
>
> (1) That Clear-View Cable TV, Inc. has not rendered efficient service, made repairs promptly, or interrupted service only for good cause and for the shortest time possible.
>
> (2) That Clear-View Cable TV, Inc. has not maintained sufficient employees to provide safe, adequate and prompt service for its facilities.
>
> (3) That Clear-View Cable TV, Inc. has attempted to evade provisions of the franchise agreement with the Town of Narrows, Virginia."

After the ordinance was read publicly and after Anglin was reminded that Clear-View should cease operation in the Town at once, he stated that Council's action was not "legal." He said, "I will continue to operate as usual until it is proven in Court that I do not have the right to do so. . . ."

During the subsequent court hearings, the following documents, among others, were received as exhibits: Excerpts from the Council minute book, the transcript of the Council meeting, and a 1980 Federal Communications Commission (FCC) system performance testing of the Town's CATV system, prepared by an independent consulting engineer who testified on behalf of Clear-View. Court testimony on behalf of the Town established essentially the same facts that had been presented during the public hearing.

Witnesses on behalf of Clear-View testified that its CATV system met or exceeded FCC technical standards, that there were approximately 950 subscribers to the Town's system, and that the market value of the system was "in the neighborhood of 450 to 500 thousand dollars." Clear-View also presented evidence that the poor performance of the system was due, for example, to electric power outages, breaks in cable due to motor vehicle accidents and falling tree limbs, unforeseen equipment failure, vandalism to equipment, weather changes, and ineptness of the subscribers in

adjusting their individual television sets. There was also evidence that if Clear-View's system was "turned off . . . today," six to nine months would elapse before another system could be installed to provide service to the Town. Clear-View offered further evidence to show that ongoing attempts had been made to respond promptly to requests for service and that great difficulty had been experienced in persuading qualified technicians to locate permanently in the community to service the equipment.

Within two weeks of the final hearing, the trial judge announced his decision in open court, finding in favor of Clear-View. The court was "impressed with the fact" of "a very definite conflict in personalities" between Anglin and Town officials. The judge noted that he found no "specific objections to the operation by Clear-View," but stated there were "many general objections." The court further observed there was no open discussion among Council after the executive session and said that if the findings of fact as stated in the ordinance "were actually made," it appeared to the court they were made during the closed session.

The trial judge further noted that only Clear-View presented evidence about the technical operation of the system and this evidence showed "that the equipment . . . was average, nothing particularly sophisticated but that it was acceptable." The court commented on the "very drastic [mandamus] procedure" which could result in a forfeiture, noting the financial investment involved and the number of persons affected by termination of the franchise.

In conclusion, the trial court decided that the notice for the special Council meeting was vague, "more vague than the provisions of the franchise itself," that the "findings of fact as set forth in the [ordinance] . . . are conclusions and not findings of fact," that the action of Council "was very drastic, unreasonable, and arbitrary in that to have forced the action upon the citizens in the town would have been to deny those citizens of the town T.V. service," and that the whole matter "could have been handled without the drastic forfeiture proceeding that we have before us." The judgment order denying mandamus incorporated by reference the court's oral opinion.

The Constitution of Virginia, art. VII, § 9 and Code § 15.1-307 authorize cities and towns to grant, as well as to terminate, franchises to use public property. Code § 15.1-23.1 empowers the governing body of any county, city, or town to franchise, tax, and regulate CATV systems. We are dealing here, of course, with the

validity ·of an ordinance terminating a franchise, and not with an enactment that grants such a privilege.[3]

Municipal corporations are prima facie the sole judges of the necessity and reasonableness of their ordinances, and "the presumption of their validity governs unless it is overcome by unreasonableness apparent on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness. This presumption is based upon the broad general principle that every intendment will be made in favor of the lawfulness of the exercise of municipal power." *National Linen Service* v. *Norfolk*, 196 Va. 277, 279, 83 S.E.2d 401, 403 (1954); *see Repass* v. *Town of Richlands*, 163 Va. 1112, 1115, 178 S.E. 3, 5 (1935). Even though there is a presumption in favor of the propriety and validity of such legislative action, the judicial branch has the authority to declare the legislative acts void if the municipality's enactments are unreasonable, inconsistent with the general law and public policy, nonuniform in their operation, or destructive rather than promotive of lawful business and occupation. *National Linen Service* v. *Norfolk*, 196 Va. at 280, 83 S.E.2d at 403.

The parties actually do not disagree about application of the foregoing general principles to this proceeding. The Town argues that the court "may review the Town's decision to determine if the process of decision was performed according to the law and the franchise agreement, was not reached in an arbitrary or capricious manner, or was the product of fraud or collusion." ClearView says that "where a municipality seeks to revoke or cancel the franchise of its franchisee, it is a question of law for the court to decide whether the municipality acted reasonably, lawfully, and based its decision on facts drawn from competent evidence." Consequently, the basic question for the trial court, upon reviewing the legislative action, was to decide whether the action of the Town Council was reasonable.

The litigant attacking legislative action as unreasonable has the burden to establish unreasonableness. *Loudoun County* v. *Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980). As we have stated in cases involving zoning ordinances, legislative action is reasonable if the matter in issue is fairly debatable. *County of Fairfax* v. *Parker*, 186 Va. 675, 680, 44 S.E.2d 9, 12 (1947). If

[3] For a review of cases involving the validity and construction of municipal ordinances regulating CATV service, see Annot., 41 A.L.R.3d 384.

the presumptive reasonableness of legislative action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the evidence of unreasonableness defeats the presumption and the legislative act cannot be sustained. *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974).

■ Upon review of a trial court's determination that a municipality's action in revoking a franchise was arbitrary and capricious, we accord the court's finding, as in the usual case, a presumption of correctness. We also, however, give full credit to the presumption of validity of the challenged legislative action and then, considering both presumptions, we examine the record to determine whether the evidence sustains the court's finding. *See Fairfax County* v. *Pyles*, 224 Va. 629, 638, 300 S.E.2d 79, 84 (1983).

■ Against this background, we examine Clear-View's argument in support of the judgment below. Initially, the company claims the trial court decided correctly that Council's findings were not findings of fact within the meaning of Section 26(b) of the franchise. We do not agree. Under these circumstances, factual findings of a municipal legislative body are not required to meet the standards of the most efficient legal technician. Even though conclusory, the findings particularize the factual bases on which Council acted with sufficient clarity to advise the grantee about the grounds of revocation. Nothing more is required, and the trial court erred in finding to the contrary.

■ Next, Clear-View contends the trial court found correctly "that the Town Council acted arbitrarily, capriciously and unreasonably." That contention likewise is without merit. It is unnecessary to rehash the evidence presented during the Council meeting as opposed to that offered during the court hearings. While there was testimony presented by Clear-View that Council's action in terminating the franchise was unreasonable, nonetheless, there was abundant evidence presented to Council to support the reasonableness of its action. We disagree with the trial court's observation that no specific objections to the operation by Clear-View were presented to Council. Sincere, vocal, and reasoned statements were made by numerous concerned citizens about Clear-View's deficiencies that extended over a period of at least four

years. The citizens, as well as members of Council, related specific instances of inefficient service, dilatory conduct, and negligent performance by the president and employees of Clear-View, all in violation of the precise terms of the franchise.

When, as here, evidence of unreasonableness is met with evidence of reasonableness, a classic case of a "fairly debatable" issue is presented. Under these circumstances, it is the legislative body, and not the court, which has the prerogative to decide the issue. *See Fairfax County v. Jackson*, 221 Va. 328, 335, 269 S.E.2d 381, 386 (1980). Because the issue is fairly debatable, the legislative judgment must stand. Thus, it follows that the trial court usurped the legislative prerogative in reversing Council's action. *Id.*, 269 S.E.2d at 386. We have considered both operative presumptions and conclude that the trial court erred in deciding Council's action was unreasonable, arbitrary, and capricious.

█ Finally, Clear-View urges that the trial court was correct in finding that the notice given for the special meeting was vague. We also reject that argument. Notice was served personally on Anglin a month and a day before the scheduled hearing.[4] A notice also was published in a Giles County newspaper for four successive weeks prior to the hearing. It stated the time, date, and place

---

"August 12, 1980

"TO: CLEAR VIEW CABLE T.V. INC.
c/o Harry Anglin
1122 Corn Tassel Trail
Martinsville, Virginia

### NOTICE

"Pursuant to Section 26 of an ordinance of the Town of Narrows effective January 1, 1976, 'An Ordinance Amending and Re-enacting a Franchise Granting Clear View T.V. the Right to Use the Streets, etc. To Install and Operate a Community Antenna T.V. System in the Town', you are hereby notified that the Town Council of the Town of Narrows, Virginia, will, in a Special Meeting, on September 15, 1980, at 7:00 p.m. at the Town Hall, 131 Center Street in the Town of Narrows, Virginia consider the passage of an ordinance terminating and cancelling your franchise and the foregoing ordinance, on the grounds that you have 1) violated provisions of said Franchise through fault and willfully; and, 2) attempted to evade provisions of the Franchise or have practiced fraud or deceit upon the Town.

"You are further notified that you are entitled to appear at the aforestated time and place and will be given an opportunity there and then to be heard before the Town Council.

"This notice is hereby given pursuant to resolution of the Town Council of the Town of Narrows passed August 11, 1980.

TOWN OF NARROWS
By  /s/  Donald E. Richardson
Mayor"

of the meeting and related the purpose: "to consider passage of an ordinance terminating and cancelling the franchise granted to Clear View Cable TV, Inc."

We hold the notice served on Anglin fully satisfied due process requirements of reasonableness. *See Commission of Fisheries* v. *Hampton Roads Oyster Packers and Planters Ass'n*, 109 Va. 565, 585, 64 S.E. 1041, 1048-49 (1909). The notice was timely and reasonably specific; it afforded Clear-View an opportunity to prepare a defense to the charges and informed the company of the subjects to be considered at the hearing. If Anglin was in doubt about the scope of the hearing, he had ample time to seek more specific information from the Mayor or Town Attorney. He testified he failed to do so, or to contact his own attorney for advice.

For these reasons, we will reverse the judgment of the trial court and remand the proceeding for entry forthwith of a writ of mandamus in accordance with the provisions of Code § 15.1-315 requiring Clear-View to comply with the termination provisions of the franchise and the ordinance of revocation dated September 15, 1980.

*Reversed and remanded.*