PRESENT: All the Justices

GREGORY M. TWIETMEYER, ET AL.

v. Record No. 971042

OPINION BY
JUSTICE CYNTHIA D. KINSER
February 27, 1998

CITY OF HAMPTON

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Walter J. Ford, Judge

This appeal involves the validity of an interim ordinance adopted by the City of Hampton to impose a stormwater management fee on real property owners. Gregory M. and Rita F. Twietmeyer (the Twietmeyers) refused to pay the fee. They contend that the ordinance does not base the fee on a property's contribution to stormwater runoff, and thus, does not comply with the enabling statute, Code § 15.1-292.4.[1] Because the Twietmeyers failed to overcome the ordinance's presumption of validity, we will affirm the circuit court's judgments against the Twietmeyers.

I.

Code § 15.1-292.4[2] authorized local governments to adopt stormwater control programs and to impose charges on

_____

[1] This section was originally codified in Code § 15.1-292.4, but is now codified in Code § 15.2-2114. For purposes of this opinion, references are to the section in effect at the commencement of this action.

[2] Code § 15.1-292.4 stated in pertinent part:

property owners to finance the cost of the programs. Pursuant to Code § 15.1-292.4, the City adopted an interim stormwater management fee ordinance, Hampton City Code § 33.1-16,[3] (the Ordinance), which became effective on July 1, 1993.

_____

> **Regulation of stormwater.** – A. The governing body of every county, city or town, by ordinance, may adopt a stormwater control program consistent with Article 1.1 (§ 10.1-603 et seq.) of Chapter 6 of Title 10.1, or any other state or federal regulation, by establishing a utility or enacting a system of service charges. Any locality which administers a stormwater control program may recover costs associated with planning, design, land acquisition, construction, operation and maintenance activities. Income derived from these charges shall be dedicated special revenue . . . .
>
> B. The charges may be assessed to property owners or occupants, including condominium unit owners or tenants . . . and shall be based upon their contributions to stormwater runoff . . . .

[3] Section 33.1-16 of the Hampton City Code provides as follows:

> **Stormwater management fees.**
> (a) Interim flat-rate stormwater management fees are hereby authorized for all properties in the city of Hampton, regardless of tax exemption, with the exception of property owned by the city of Hampton or a unit of the city which shall receive a full waiver of charges. The following monthly rates shall apply to each month since the effective date of this ordinance or the last assessment billing, whichever constitutes the fewer months:

At that time, the Twietmeyers jointly owned seven parcels of residential property in the City. During the fiscal year July 1, 1993, through June 30, 1994, the Twietmeyers did not pay the stormwater management fees assessed by the City on any of their parcels of land. Thus, on March 18, 1996, the City filed seven motions for judgment against the Twietmeyers in the General District Court for the City of Hampton to collect the stormwater management fees attributed to or levied upon their parcels. In response, the Twietmeyers asserted that the Ordinance does not comply with Code § 15.1-292.4. The general district court consolidated the actions and entered judgment against the Twietmeyers for $210. The Twietmeyers then appealed to the Circuit Court of the City of Hampton.

Neither the Twietmeyers nor the City presented any testimony before the circuit court. The Twietmeyers did, however, introduce into evidence a Feasibility Study of Stormwater Management Financing Alternatives dated April

--------------

|                                | Monthly Rate |
| ------------------------------ | ------------ |
| Residential Properties         | $ 2.50       |
| Non-residential Properties     | $12.50       |

Residential and Non-Residential (which shall consist of all other properties grouped together) properties shall be as defined by the city assessor.

13, 1993, and prepared for the City by the consulting firm of Black & Veatch (Black & Veatch Study). The Black & Veatch Study recommended that the interim fee be based upon "equivalent residential units," that a residential parcel be equal to one such unit, and that a commercial parcel be equal to five units. The Study also stated that stormwater user fee structures are generally based on such parameters as impervious area, percentage of impervious area, gross area and intensity of development, or gross area and type of development.

The Twietmeyers again argued that the Ordinance fails to assess the fee on the basis of a property's contribution to stormwater runoff as required by Code § 15.1-292.4. In support of their argument, they relied primarily on an Attorney General Opinion, which concluded that the Ordinance lacks any rational connection between the amounts charged and runoff contributions. Conservation: Flood Protection and Dam Safety – Stormwater Management, 1995 Op. Va. Att'y Gen. 91.

After argument by the parties, the circuit court entered seven judgments against the Twietmeyers in the amount of $30 each, for a total of $210. Each judgment involves a "matter not merely pecuniary." Code § 8.01-672. Thus, this Court is not prevented from exercising

4

jurisdiction because of the amount of each judgment.  The

Twietmeyers appeal.

II.

Our review of the Twietmeyers' challenge to the City's

Ordinance is guided by established principles regarding an

ordinance's presumption of validity:

> Municipal corporations are prima facie the sole judges
> of the necessity and reasonableness of their
> ordinances, and "the presumption of their validity
> governs unless it is overcome by unreasonableness
> apparent on the face of the ordinance or by extrinsic
> evidence which clearly establishes the
> unreasonableness.  This presumption is based upon the
> broad general principle that every intendment will be
> made in favor of the lawfulness of the exercise of
> municipal power."

Town of Narrows v. Clear-View Cable TV, Inc., 227 Va. 272,

280, 315 S.E.2d 835, 839-40, cert. denied, 469 U.S. 925

(1984) (quoting National Linen Service v. Norfolk, 196 Va.

277, 279, 83 S.E.2d 401, 403 (1954)). Thus, for the

Twietmeyers to prevail, the Ordinance must be unreasonable

on its face, or they must present evidence clearly proving

its unreasonableness.  We also "accord the trial court's

finding a presumption of correctness."  Tidewater Ass'n of

Homebuilders, Inc. v. City of Virginia Beach, 241 Va. 114,

122, 400 S.E.2d 523, 528 (1991).

Applying this standard of review, we first address the

Twietmeyers' argument that the Ordinance is facially

5

unreasonable. They assert that, since the Ordinance contains only two categories of fees, residential and non-residential, and does not differentiate between properties within each category on the basis of other factors such as impervious area or type of development, the Ordinance does not satisfy the mandate of Code § 15.1-292.4(B). In sum, they contend that no correlation exists between the fees and a property's contribution to stormwater runoff. We do not agree.

Although the Ordinance uses the term "flat rate," it does not charge all properties in the City the same fee. Rather, the Ordinance, on its face, imposes a higher fee on non-residential property at a ratio of five times the fee imposed on residential property.[4] Thus, considering the Ordinance solely on its face, we find that its fee structure is neither unreasonable nor based on some factor other than the amount of contribution to stormwater runoff. Indeed, the Attorney General, in the opinion relied on by the Twietmeyers, stated that "a locality adopting such service charges may need to impose an initial schedule of

---

[4] The City argued that it actually had three classifications of property because it adopted a resolution in February 1994 that remitted fees charged for undeveloped properties, whether zoned residential or commercial. However, we base our decision on the two categories contained in the Ordinance.

charges that categorizes properties in some manner that only approximates, on an average basis, their respective runoff contributions." Conservation: Flood Protection and Dam Safety – Stormwater Management, 1995 Op. Va. Att'y Gen. 91, 92. Because the Ordinance differentiates between residential and non-residential property, we conclude that the fee charged bears a rational correlation to the amount of stormwater runoff.

The Twietmeyers, nevertheless, argue that our decision in Violett v. City Council of Alexandria, 92 Va. 561, 23 S.E. 909 (1896), prescribes a different result. We do not agree. In that case, Alexandria's charter provided that whenever a street was laid out, paved, or repaved, Alexandria could charge two-thirds of the expenses to "the owners of the real estate benefitted thereby." Id. at 562, 23 S.E. at 909. Alexandria, however, assessed property owners on the basis of the property's frontage on the improved street. We framed the question on appeal as:

> [W]hen the Legislature has delegated the authority to cities or towns to assess the expense on the lots or property benefited, whether such a delegation of power limits the municipal authorities as to the mode of making the assessment, or whether, having such authority, they may select the mode of apportioning the expense, and impose it by the front foot, square foot, or value . . . .

Id. at 577–78, 23 S.E. at 914.

We concluded that Alexandria's assessment was invalid because the mode of assessment, the property's frontage on the improved street, differed from the mode authorized, the property benefited by the improvement. Id. at 580, 23 S.E. at 915. Unlike the assessment in Violett, the City's Ordinance does not employ an unauthorized mode of assessment. On its face, the Ordinance differentiates between residential and non-residential property, and we cannot say that the differentiation bears no relation to a property's contribution to stormwater runoff.

We also find the Twietmeyers' reliance on authorities discussing a municipal corporation's taxing power to be misplaced. The General Assembly granted the City the authority to enact the Ordinance under its police powers. The fee is tied directly to the administration of stormwater management and is not meant to raise general revenue. Thus, the stormwater management fee is a regulation, not a tax. City of Virginia Beach v. Virginia Restaurant Assoc., 231 Va. 130, 134, 341 S.E.2d 198, 200 (1986); see also Weber City Sanitation Commission v. Craft, 196 Va. 1140, 1151, 87 S.E.2d 153, 160 (1955) (holding that a charge for use and service of water system is not a tax).

8

Finally, we deny the Twietmeyers' request that the Court adopt the Attorney General's Opinion that the Ordinance lacks any rational connection between the amounts charged and runoff contributions. "While [the opinion is] entitled to due consideration, [it is] not binding on this Court." Virginia Restaurant Assoc., 231 Va. at 135, 341 S.E.2d at 201.

Since the Ordinance is not facially unreasonable and the Twietmeyers did not present any evidence of unreasonableness, the presumption of validity governs. Town of Narrows, 227 Va. at 280, 315 S.E.2d at 839-40. Therefore, we will affirm the judgments of the circuit court.

Affirmed.

CHIEF JUSTICE CARRICO, with whom JUSTICE HASSELL and JUSTICE KOONTZ join, dissenting.

I respectfully dissent from the majority's decision to uphold the validity of the ordinance at issue in this case. In my opinion, the threshold question to be decided is not whether the ordinance is reasonable or unreasonable, as the majority posits, but whether, in adopting the ordinance, the City of Hampton acted within the bounds of the authority granted by the General Assembly in Code § 15.1-292.4. Only if the threshold question is answered in the

9

affirmative would the question of reasonableness ever be reached.

In my view, the answer to the threshold question should be in the negative, and I think the fact that the City exceeded its authority appears from the face of the ordinance itself. Code § 15.1-292.4 provides that service charges for stormwater control programs assessed to property owners and occupants "shall be based upon their contributions to stormwater runoff." This language clearly envisions some sort of individualized treatment of the different parcels of land in the city. Yet, the Hampton ordinance authorizes flat rate stormwater management fees for all properties in the city. The flat-rate language ignores the concept of individualized treatment and disregards the statutory requirement that the charges should be based upon contributions to stormwater runoff.

Nor, in my opinion, is the situation saved for the City by the fact that different rates are prescribed for residential properties and non-residential properties. The flat-rate evil of the assessment permeates the entirety of each of the two classes of property, still ignoring the concept of individualized treatment and disregarding the statutory requirement that the charges should be based upon contributions to stormwater runoff.

Accordingly, I would reverse the judgment of the trial court.