Present:  All the Justices

CARDINAL DEVELOPMENT COMPANY
                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 971001          February 27, 1998

STANLEY CONSTRUCTION COMPANY, INC.

              FROM THE CIRCUIT COURT OF HANOVER COUNTY
                      Richard H. C. Taylor, Judge

                                I.

     In this appeal, we consider issues that arose during
the trial of an action for breach of a construction
contract.

                                II.

     Stanley Construction Company, Inc. (Stanley
Construction), filed its amended motion for judgment against
Cardinal Development Company (Cardinal).  Stanley
Construction alleged that Cardinal breached its construction
contract by refusing to pay Stanley Construction for certain
additional work it had performed.  Stanley Construction also
alleged that it was entitled to recover damages from
Cardinal under a theory of quantum meruit.  Cardinal denied
that it was indebted to Stanley Construction and filed a
counterclaim seeking to recover monies that it purportedly
overpaid to Stanley Construction.

     At the conclusion of a bench trial, the trial court
found that Cardinal had breached the contract, entered a
judgment in favor of Stanley Construction in the amount of
$99,894.80, and denied Cardinal's counterclaim.  Cardinal
appeals.

                                III.

A.

We will review the evidence in the light most favorable to Stanley Construction, the prevailing party below.  Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997). Because the trial court heard the evidence ore tenus, its findings based on an evaluation of the testimony have the same weight as a jury verdict.  Id.  We will affirm the trial court's judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.  Code § 8.01-680; Horton, 254 Va. at 115, 487 S.E.2d at 203, Tuomala v. Regent Univ., 252 Va. 368, 375, 477 S.E.2d 501, 505-06 (1996).

B.

Cardinal planned to develop a residential subdivision called Battlefield Green on a tract of land in Hanover County.  Cardinal divided the subdivision into several sections:  B-5, B-6, A-7, and A-8. Sections A-7 and A-8 are the subjects of this dispute.  Cardinal intended to construct single-family homes in Section A-7 and townhouses in Section A-8.

Cardinal executed a contract with Holly & Associates, Ltd., an engineering and surveying firm, to prepare the subdivision plats and construction plans for the streets, sanitary sewer, storm drainage, water distribution, and erosion control.  Cardinal also executed a contract with Stanley Development to construct all the "improvements required by [Hanover] County to each section to include but

2

not limited to the roads, water, sewer, curbs, gutters, sidewalks, [and] drainage all pursuant to the plans and specifications prepared by Cardinal's engineers, Holly & Associates, Ltd." This contract was "subject to [Hanover] County not making any substantial changes to the storm drainage system in either Section A-7 or Section A-8." Cardinal agreed to pay Stanley Construction $1,025,000 for performance of the work.

Holly & Associates provided Stanley Construction with a building plan for Section A-7 in February 1991, before Stanley submitted its bid to Cardinal. This building plan indicated that 42 lots would be created in Section A-7. Even though a plat existed which indicated that 62 lots would be constructed on Section A-7, this plat was not a building plan, and Stanley Construction based its price on the building plan for Section A-7. Subsequently, Holly & Associates developed a building plan for Section A-7 which increased the number of lots from 42 to 62.

Hanover County approved Cardinal's subdivision plans for Section A-7 in 1993. The approved plan differed substantially from the 42-lot plan that Holly & Associates had supplied to Stanley Construction in February 1991.

Randolph L. Middleton, Stanley Construction's estimator, testified that he compared the 1991 A-7 building plan with the County-approved plan and determined that the later plan significantly increased the scope of the work that Stanley Construction would be required to perform. The

County-approved plan increased the number of building lots from 42 to 62, added a pedestrian path which was not shown in the original building plan, increased the amount of work necessary for erosion control and "clearing and grubbing" sites, added changes to the storm sewer system, and created an additional grade basin and an off-road right-of-way.

Calvin L. Stanley, president of Stanley Construction, sent a letter dated November 9, 1993 to Charles E. Ayers, Cardinal's vice-president, director, and major stockholder, which summarized the substantial changes in the scope of the work. Later that November, Calvin Stanley met with Ayers, A. Wayland Stanley (chairman of the board of Stanley Construction), Middleton, and Vincent G. Robinson (a real estate broker and developer who performed work for Cardinal). During this meeting, A. Wayland Stanley and Calvin Stanley informed Ayers about the changes in the scope of work in Section A-7. After a discussion among the persons at the meeting, Ayers directed Stanley Construction's employees to proceed with the work.

A. Wayland Stanley testified that during the November 1993 meeting, Ayers "told us to go ahead and proceed with the work, proceed with it. The only thing he would expect from us was to treat him fairly . . . . To my knowledge, the only thing he ever told us was to proceed with the work and . . . be fair with him in the billing. That's the only thing I remember him saying." Middleton and Calvin Stanley testified that Ayers directed them to proceed with the work.

4

Middleton testified that Ayers told him to bill Cardinal fairly for performance of the work.

Hanover County also made changes to the plans for Section A-8 of the subdivision. Middleton, who compared the County-approved plans to the original plans that Holly & Associates had provided to Stanley Construction for purposes of bidding on the contract, identified substantial differences in the plans. The approved plans required, among other things, additional paving, curbs and gutters; construction of a turning lane; changes in sanitary sewer encasement; changes in the sewer system; clearing and grubbing; grading; soil erosion control; traffic control, and patching and excavation.

Stanley Construction performed some of the additional work and submitted invoices to Cardinal for payment. Some of those invoices specifically stated that the work performed was "extra work versus contract or original scope of work." On one invoice, the notation "extra work" appears. Cardinal paid the invoices for extra work, even though occasionally it paid the bills late. Calvin Stanley testified that in the fall of 1995, Charles Ayers informed him that Cardinal would pay the outstanding bills for Section A-7 "before Christmas" of 1995.

Connie Z. Hawkes, Stanley Construction's former office manager and secretary of the corporation, testified that the total amount of additional work that Stanley Construction performed because of changes in the scope of the work to

5

Sections A-7 and A-8 totaled $151,905.50.  Although Calvin Stanley testified that Stanley Construction expected the County to make some changes in the plans that Stanley Construction relied upon to make its bid, Stanley Construction did not expect that Cardinal or the County would significantly expand the scope of the project.

IV.

Cardinal argues that "[t]he [t]rial [c]ourt erred by admitting parol evidence to interpret the parties' unambiguous lump sum, fixed price written contract." Cardinal asserts that "[u]nder the parties' contract, Stanley [Construction] bore the risk that performance might turn out to be more difficult or more expensive than it predicted," and that "[p]arol or extrinsic evidence is generally inadmissible to alter, contradict, or explain the terms of a written contract . . . ."  We do not consider this assignment of error because Cardinal did not argue in the trial court that the parol evidence rule barred admission of any evidence.  Rule 5:25.

V.

Cardinal argues that Stanley Construction failed to present sufficient evidence to support the trial court's finding that Cardinal agreed to modify the lump sum, fixed price contract and pay Stanley Construction for the additional work.  We disagree.

In Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983), we stated the following

principles which are relevant here:

> "[A] course of dealing by contracting parties, considered in light of all the circumstances, may evince mutual intent to modify the terms of [a] contract. See Kent v. Kent, 2 Va. Dec. 674, 678, 34 S.E. 32, 33 (1899) . . . . But the circumstances surrounding the conduct of the parties must be sufficient to support a finding of a 'mutual intention' that the modification be effective, Warren v. Goodrich, 133 Va. 366, 388, 112 S.E. 687, 694 (1922), and such intention must be shown by 'clear, unequivocal and convincing evidence, direct or implied', id. at 389, 112 S.E. at 694. And when one party claims that the other party has surrendered a right guaranteed by the contract, the party asserting such modification must prove either passage of valuable consideration, estoppel in pais, or waiver of the right. See Atlantic Coast Line v. Bryan, 109 Va. 523, 65 S.E. 30 (1909)."

Applying these principles, we hold that there is clear, unequivocal, and convincing evidence in the record which shows that Cardinal and Stanley Construction intended to modify the terms of their contract and that Cardinal agreed to pay for the additional work that Stanley Construction had performed. As we have already stated, the building plan that Holly & Associates provided to Stanley Construction in February 1991 indicated that 42 lots would be created in Section A-7, but the County-approved plan provided for the creation of 62 lots, as well as other substantial changes.

Upon receiving these plans, Calvin Stanley forwarded a letter to Ayers, Cardinal's vice-president, and at a subsequent meeting, Ayers directed Stanley Construction to "proceed with the work" on Section A-7 and to "treat [Cardinal] fairly" in billing Cardinal for the additional work. Cardinal's clear instructions that Stanley

7

Construction bill Cardinal fairly mean that Cardinal agreed, by its conduct, to expand the scope of the work and to pay for the additional work. Cardinal paid Stanley Construction's detailed invoices for the additional work for one and one-half years without complaint and Ayers, on behalf of Cardinal, promised to pay for the completed work on A-7 "before Christmas of" 1995. Cardinal's agreement to pay for the additional work, along with Stanley Construction's actual performance of that work, constitutes valuable consideration sufficient to modify the contract.

After Calvin Stanley sent a letter to Ayers complaining about the substantial changes in the scope of the work for Section A-8, Cardinal further agreed to modify the contract when Ayers informed Stanley by letter: "I am in receipt of your letter with the price increases and assuming that they are items that you could not determine initially we will pay whatever the cost increase is based on unit pricing." Calvin Stanley and Middleton testified that the changes in the scope of the work, including the substantial increases in the quantity of work and the materials required by the County-approved plans, were not items that they could have determined when the construction contract was executed. Cardinal also paid bills that Stanley Construction had submitted to it for work performed for Section A-8.

## VI.

Cardinal argues that Stanley Construction "presented insufficient evidence to prove 'substantial changes to the

storm drainage systems'" and, thus, the trial court erred by awarding Stanley Construction damages for additional work associated with these items. We disagree. As we have already stated twice, at least two witnesses testified on behalf of Stanley Construction that the scope of the work shown on the County-approved plans for Section A-8 changed substantially, including the scope of the storm drainage work. Additionally, Cardinal, by its conduct, agreed to enlarge the scope of the work and pay Stanley Construction for that work. Thus, we find no merit in this contention.

## VII.

We reject Cardinal's argument that the "trial court erred by allowing Stanley to recover on a theory not raised in Stanley's motion for judgment." Cardinal says that the trial court's judgment is "flawed because it appears to be based on some sort of estoppel or waiver theory -- theories never raised by Stanley . . . ." Our review of the record indicates that the trial court considered this case as a breach of contract action and that the trial court's judgment was not based upon principles of estoppel or waiver.

## VIII.

Cardinal argues that Stanley Construction presented insufficient evidence to prove its damage claims. We disagree.

Stanley Construction adduced extensive testimony in support of its damages. Stanley Construction presented

evidence of the amounts it billed to Cardinal for additional work performed on Sections A-7 and A-8, payments made by Cardinal, and the balance due.  In addition, the trial court admitted Stanley Construction's billing records in evidence. The trial court considered this evidence, which was disputed by Cardinal, and awarded Stanley Construction $54,319.76 in damages for work performed in Section A-7 and $45,575.04 for damages related to Section A-8.  We cannot say, from our review of the record, that the trial court's award is plainly wrong or without evidence to support it.  Horton, 254 Va. at 115, 487 S.E.2d at 203.

We also disagree with Cardinal's contention that the trial court made an erroneous damage calculation.  Cardinal argues that one of Stanley Construction's trial exhibits contained mathematical errors and that the trial court relied upon this erroneous exhibit when calculating the award of damages.  However, Stanley Construction responded at trial, and here, that its evidence of damages was based on actual work performed and invoices mailed, not on the errors contained in the challenged exhibit.  Upon our review of this record, which contains disputed evidence, we cannot say that the trial court, as the trier of fact, erred by accepting Stanley Construction's explanation of the errors contained in the challenged exhibit.[*]

_____

[*] During a colloquy between counsel at trial, Stanley Construction's counsel offered to make certain stipulations if Cardinal's counsel could identify mathematical errors. The record is devoid of a stipulation of any figures which

10

## IX.

Cardinal argues that the trial court erred by failing to grant judgment on its counterclaim.  Cardinal contends that the undisputed evidence adduced at trial demonstrated that it made overpayments to Stanley Construction in the amount of $87,346.67 and that Cardinal is entitled to repayment of those funds.  The trial court, however, implicitly held that the monies that Cardinal purportedly overpaid were actually payments that Cardinal made to Stanley Construction for the additional work that Stanley Construction had performed.  This is a factual issue which was resolved by the trial court, and we cannot say, based upon the evidence of record, that the trial court was plainly wrong.

## X.

For the foregoing reasons, the judgment of the trial court will be affirmed.

<u>Affirmed</u>.

---

would form the basis for any credits or deductions related to the alleged errors.