Present:  All the Justices

MOUNTAIN VIEW LIMITED PARTNERSHIP,
AND CLIFTON WOODS LIMITED PARTNERSHIP

v.  Record No. 972275   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         September 18, 1998
THE CITY OF CLIFTON FORGE

FROM THE CIRCUIT COURT OF THE CITY OF CLIFTON FORGE
Duncan M. Byrd, Jr., Judge

In this appeal, we decide whether a former ordinance setting rates for refuse collection constituted an impermissible tax and whether the rate classifications contained in the ordinance were reasonable.

I.

In June 1991, the City Council for the City of Clifton Forge (City) enacted an ordinance increasing refuse collection charges in the City based on a classification system of residential and commercial users (1991 Ordinance).[1]  The fees imposed by the 1991 Ordinance varied in accordance with the described classifications.  For example, single family residences receiving weekly service were charged $13.50 per month.  Apartment house owners who collected refuse in "dumpsters" and received weekly or biweekly service were charged $12.55 per month for each residential unit.  Rooming house

_____

[1]In 1993, the 1991 Ordinance was repealed and a new ordinance was enacted (1993 Ordinance).  The 1993 Ordinance set rates for refuse collection based on anticipated volume assigned to "equivalent dwelling units."

owners receiving weekly service were charged $6.75 per room per month.  Stores, businesses, restaurants, banks, and office buildings requiring one collection per week also were charged $13.50 per month.  However, some businesses, such as beauty shops, dry cleaners, and service stations, were charged higher fees, due to the nature of the waste that they generated.

Mountain View Limited Partnership owns and operates an apartment complex known as Mountain View Apartments, which consists of 54 residential units.  Clifton Woods Limited Partnership owns and operates an apartment complex known as Clifton Woods Apartments, which contains 66 residential units.  Both complexes are located within the City of Clifton Forge and each uses one "dumpster" for the disposal of solid waste.  The "dumpster" at the Mountain View complex is emptied by the City twice per week, while the "dumpster" at the Clifton Woods complex is emptied once per week.

Before July 1991, Mountain View Limited Partnership and Clifton Woods Limited Partnership (collectively, Mountain View) paid the City a refuse collection fee of $7.00 per month for each residential unit.  Under the 1991 Ordinance, Mountain View was required to pay $12.55 per month for each residential unit.

In October 1992, Mountain View filed a motion for judgment and motion for declaratory judgment against the City,

2

challenging the validity of the 1991 Ordinance.[2]  The issues

raised at trial were whether the fee imposed by the 1991

Ordinance constituted an impermissible tax and whether the fee

classifications contained in the Ordinance were valid.

At trial, Thomas C. Trinkle, the managing general partner

of Mountain View, testified that other local jurisdictions

charged comparable apartment complexes refuse collection fees at

a flat rate of $28 a month and $132 a month.  He also testified

that the City of Covington charged $5.23 per dwelling unit per

month for refuse collection.

At Mountain View's request, Jason Hartman, a certified

public accountant, made a comparative analysis of the City's

annual financial reports pertaining to refuse collection for

fiscal years 1990-91 through 1995-96.  Hartman testified that

these documents showed a total accumulated surplus of about

$832,000 over the six-year period.  As of June 1996, the

accumulated surplus was $615,742.12.  This amount included a

$125,000 loan made in June 1996 from the solid waste fund to

other governmental units included in the City's general fund.

---

[2]After the 1991 Ordinance became effective, Mountain View
refused to pay the applicable garbage collection fee.  The City
filed two separate motions for judgment against Mountain View
seeking payment of fees and penalties plus interest for the
failure to pay garbage collection fees.  The parties agree that
if the ordinance is valid, Mountain View owes the City $59,046
plus interest of 10% per year from November 1, 1993, until paid,

Hartman stated that the City maintains its solid waste fund as a unit of the "general fund" of the City. He explained that the general fund is a "governmental fund," which is analyzed under accounting principles by tracking the flow of financial resources, rather than by measuring individual costs and related revenue for those costs.

Hartman testified that in order to determine whether a proprietary fee approximates the cost of providing a service, the "enterprise fund" method of accounting should be used. The governmental fund and the enterprise fund methods differ in the manner in which future expenses are listed. Under the governmental fund method, an expense is recorded only in the year the expenditure is made, while the enterprise fund method accounts for future expenses prior to the actual expenditure. Hartman agreed, however, that both methods of accounting are appropriate for use by a municipality, and that there is no requirement that one method be used over the other.

Hartman further noted that in 1995 and 1996, the City's expenditures for solid waste management almost doubled. He explained that this increase was due to the fact that, in these years, the City allocated to the solid waste fund 25% of the costs incurred by other departments in performing duties related

for services rendered between November 1, 1992, and September 30, 1995.

to solid waste management. Although Hartman was "skeptical" of this allocation, he acknowledged that there are many ways to estimate a proper allocation of costs, and that accounting principles dictate only that the method be reasonable and consistent.

Stephen A. Carter, the City Manager of Clifton Forge from June 1989 through June 1994, testified that the City paid for refuse disposal based on volume. He stated that since it is impractical to weigh refuse collected at every separate location in the City, the 1991 Ordinance classifications were created in an attempt to account for the difference in the volume of refuse generated by various commercial and residential users.

Carter explained that the City raised the refuse collection fees in 1991 based on an expected increase in operating costs and future expenditures relating to the closing of the landfill used by the City. Carter stated that, in 1991, the City disposed of its solid waste in the Peters Mountain Landfill, which was scheduled to close in the "near future."

Based on a consultant's report detailing the cost of complying with state and federal regulations relating to landfill closings, the City determined that its current fee structure would not support the expenses related to the Peters Mountain closing and other anticipated expenses. Carter stated that the City Council enacted the increased fees in the 1991

Ordinance to ensure that the City could meet its anticipated expenses, and that an unexpected delay in the landfill closing resulted in a surplus in the solid waste fund.

Beginning in fiscal year 1994, Carter decided to allocate to the solid waste fund the cost of work performed by other City departments on solid waste management, which previously had been billed to those other departments within the City's general fund. After discussions with managers of the relevant city departments, Carter determined that about 25% of the costs incurred by other City departments were related to solid waste management. Other city employees testified that Carter's estimate was reasonable.

Thomas Price Smith, the City's independent auditor, testified that he reviewed the 25% allocation and concluded that it was reasonable. Smith also stated that, in his experience performing audits for about 70 counties, towns, and cities in Virginia, many local governments maintain a solid waste fund surplus.

Smith explained that maintaining a surplus is desirable because a municipality must plan for future expenses. He testified that if a local governing body "spend[s] down" to zero at the end of its fiscal year, the governing body will have no funds with which to operate in the first month of the new fiscal year. Smith also stated that the State Auditor of Public

6

Accounts requires that solid waste expenditures be reported under the governmental fund method of accounting.

Richard Magnifico, the current city manager, testified that the City no longer uses the Peters Mountain Landfill and presently disposes of its solid waste at the Alleghany transfer station. He explained that "tipping fees," the cost for disposing of each ton of solid waste, increased from approximately $20 per ton at the Peters Mountain Landfill to $65 per ton at the Alleghany transfer station.

Magnifico projected that the City's solid waste fund would have a zero or a negative balance by the next fiscal year. He attributed this situation to the costs associated with the closing of the Peters Mountain Landfill, the increased "tipping" fees, the purchase of a new garbage truck for $78,000, and the purchase of a recycling truck for $30,000 and recycling containers for $22,000.

After hearing this evidence, the trial court held that the 1991 Ordinance imposed a valid fee, rather than an impermissible tax, and that there was sufficient evidence of the reasonableness of the Ordinance classifications to render the issue fairly debatable. Thus, the trial court upheld the 1991 Ordinance and entered judgment in favor of the City in the total amount of $59,046 plus interest.

On appeal, Mountain View argues that the City enacted the 1991 Ordinance as a means of generating revenue to pay for the cost of performing other municipal functions. Mountain View asserts that under McMahon v. City of Virginia Beach, 221 Va. 102, 267 S.E.2d 130, cert. denied, 449 U.S. 954 (1980), and Tidewater Ass'n of Homebuilders, Inc. v. City of Virginia Beach, 241 Va. 114, 400 S.E.2d 523 (1991), the fee imposed by the Ordinance was an impermissible tax, because the fee exceeded the actual cost of providing the service and there was no reasonable correlation between the benefit conferred and the burden imposed.

Although Mountain View concedes that the City may collect fees and maintain a surplus to pay for anticipated expenses, it contends that the present evidence in support of the need for a surplus is incredible as a matter of law. Mountain View argues that the surplus in the solid waste fund of at least $615,000 far exceeded the estimated costs associated with the closing of the Peters Mountain Landfill, particularly since those costs were payable over a period of 30 years.

Mountain View also asserts that the City's allocation of 25% of costs from other municipal departments to the solid waste fund, and the loan in the amount of $125,000 to other governmental units included in the general fund, indicate that

the City improperly used the revenue generated by the 1991 Ordinance to support other city functions. Mountain View contends that, through use of the governmental fund accounting method, the City has attempted to hide its use of funds generated from solid waste collection fees to support other municipal functions. We disagree with Mountain View.

We first consider the principles set forth in McMahon and Tidewater. In McMahon, the City of Virginia Beach had enacted an ordinance requiring landowners to connect their properties to the municipal water supply system, even if the owners did not intend to use any water from the system. 221 Va. at 104, 267 S.E.2d at 132. Several landowners filed a declaratory judgment suit against the City alleging, among other things, that the water connection fee was an impermissible tax. The trial court disagreed, ruling that the fee was valid. Id. at 106, 267 S.E.2d at 133. We affirmed the trial court, holding that "because the charges imposed by the ordinance would not exceed the actual cost to the City of installing the waterlines in the streets in front of the landowners' residences, a reasonable correlation arose between the benefit conferred and the cost exacted." Id. at 107, 267 S.E.2d at 134. Thus, we concluded that the evidence refuted the landowners' contention that the ordinance was adopted solely as a revenue-generating measure. Id. at 108, 267 S.E.2d at 134.

Later, in Tidewater, we addressed the validity of a Virginia Beach ordinance that assessed a "water resource recovery fee" on all new connections to the City's water system. 241 Va. at 117, 400 S.E.2d at 525. The fee was designed to finance, in part, the acquisition of water from Lake Gaston for use by the City's residents. A homebuilders' organization challenged the ordinance alleging, among other things, that the ordinance imposed a tax rather than a valid fee. Id. at 120, 400 S.E.2d at 527. The trial court upheld the ordinance. Under the principles set forth in McMahon, we approved the trial court's ruling and held that under the facts presented, there was a reasonable correlation between the benefit of the service provided and the burden imposed by the fee. Id. at 121, 400 S.E.2d at 527.

We did not hold in either case that a fee charged by a municipality could not exceed the projected cost of providing the service, or that a municipality may not maintain a surplus in anticipation of future expenses. In fact, Code § 15.2-2505[3] expressly provides that a locality may include in its budget a reasonable reserve for contingency expenditures. Under the facts presented in McMahon and Tidewater, we merely concluded that since the costs of the planned services exceeded the fees

10

imposed for those services, there was no merit to the contention that either of the ordinances constituted an impermissible tax. See Tidewater, 241 Va. at 121, 400 S.E.2d at 527; McMahon, 221 Va. at 107, 267 S.E.2d at 134.

In Tidewater, we implicitly acknowledged that a municipality may collect fees in anticipation of future expenses when we stated that the City was not only making significant expenditures presently, but would be required to make future expenditures to implement the project. 241 Va. at 122, 400 S.E.2d at 528. We also stated in McMahon that a municipality may enact ordinances in anticipation of future problems, and that there "is no requirement that protective measures be limited to actions taken after a crisis." 221 Va. at 107, 267 S.E.2d at 134.

In accordance with these principles, we hold that a municipal ordinance setting a fee for refuse collection and disposal is not an invalid revenue-generating device solely because the fee set by the ordinance generates a surplus. The relevant inquiry, as set forth in McMahon and reaffirmed in Tidewater, is whether there is a reasonable correlation between the benefit conferred and the cost exacted by the ordinance.

---

[3]This section, effective December 1, 1997, does not differ substantively from Code § 15.1-161.1, which was in effect on the date of trial.

Tidewater, 241 Va. at 121, 400 S.E.2d at 527; McMahon, 221 Va. at 107, 267 S.E.2d at 134.

In applying this test to the 1991 Ordinance, we consider the evidence in the light most favorable to the City, the prevailing party at trial.  Hudson v. Lanier, 255 Va. 330, 331, 497 S.E.2d 471, 472 (1998); Cardinal Dev. Co. v. Stanley Constr. Co., 255 Va. 300, 302, 497 S.E.2d 847, 849 (1998).  We will not disturb the trial court's decision unless it is plainly wrong or without evidence to support it.  Code § 8.01-680; Hudson, 255 Va. at 333-34, 497 S.E.2d at 473; Cardinal, 255 Va. at 302, 497 S.E.2d at 849.

We conclude that the record contains sufficient evidence to support the finding of a reasonable correlation between the benefit conferred and the cost exacted by the 1991 Ordinance. The evidence showed that the benefit conferred by the Ordinance included the refuse collection service itself, as well as payment of projected costs relating to landfill closing regulations, greatly increased "tipping" fees, and new equipment.

The maintenance of a budget surplus to pay for future costs was supported by the testimony of Thomas Price Smith, the City's auditor, and Jason Hartman, Mountain View's accounting expert. Both witnesses testified that municipalities commonly maintain surpluses in solid waste funds, and Smith added that such a

12

practice is desirable to ensure that a municipality can meet the public's needs. The evidence also showed that the City's solid waste fund surplus essentially has been depleted due to recent expenditures necessary for the provision of solid waste collection services.

We disagree with Mountain View that a different outcome is required based on the City's allocation of 25% of its costs from other departments to the solid waste department. This allocation was supported by Stephen Carter's testimony, as well as the testimony of Richard Magnifico, and Lee Anna Tyler, the City's accounting supervisor, who confirmed that the 25% figure was a reasonable estimate of the amount of work performed by other departments relating to solid waste management. Even Mountain View's expert, Hartman, agreed that the practice of allocating costs from other departments is reasonable, and that formal studies are not required to determine an appropriate allocation.

We also find no merit in Mountain View's contention that the $125,000 loan made from the solid waste fund to other governmental units included in the City's general fund is evidence that the 1991 Ordinance is a revenue-generating device.

Under Code § 15.2-1105,[4] cities have authority to borrow money. Moreover, since the evidence was not refuted that this loan always has been accounted for as part of the solid waste fund surplus, the record does not show that this money was improperly diverted to other governmental units within the general fund.

The City's use of the governmental fund accounting method also does not alter our decision. Both accountants who testified agreed that the City's use of this accounting method was proper, and that accounting principles do not require the City to use the enterprise fund accounting method. The City's use of the governmental fund method also assists the City in complying with the requirement of the State Auditor of Public Accounts that the City use this method of accounting in its reports to that office. Therefore, under the principles set forth in McMahon and Tidewater, we conclude that the evidence supports the trial court's determination that the 1991 Ordinance imposed a valid fee.

### III.

Mountain View also argues that the trial court erred in ruling that the classifications contained in the 1991 Ordinance were reasonable. Mountain View notes that Carter, the former city manager, conceded that the cost associated with refuse

---

[4]This section, effective December 1, 1997, does not differ substantively from Code § 15.1-843, which was in effect on the

collection from businesses is no different from the cost involved in refuse collection from apartment buildings. Thus, Mountain View contends that the 1991 Ordinance was invalid because it charged apartment building owners more for the same service provided to business customers. We disagree with Mountain View's argument.

We review Mountain View's challenge under well-established principles that afford the 1991 Ordinance a presumption of validity. See Twietmeyer v. City of Hampton, 255 Va. 387, 390, 497 S.E.2d 858, 860 (1998); Town of Narrows v. Clear-View Cable TV, Inc., 227 Va. 272, 280, 315 S.E.2d 835, 839-40 (1984), cert. denied, 469 U.S. 925 (1985). "Municipal corporations are prima facie the sole judges of the necessity and reasonableness of their ordinances, and the presumption of their validity governs unless it is overcome by unreasonableness apparent on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness." Tweitmeyer, 255 Va. at 390-91; 497 S.E.2d at 860 (quoting Town of Narrows, 227 Va. at 280, 315 S.E.2d at 839-40); accord National Linen Service Corp. v. City of Norfolk, 196 Va. 277, 279, 83 S.E.2d 401, 403 (1954).

A party challenging the validity of an ordinance has the burden of proving that the ordinance is unreasonable. Twietmeyer, 255 Va. at 391, 497 S.E.2d at 860; Town of Narrows,

date of trial.

15

227 Va. at 280, 315 S.E.2d at 840; Board of Supervisors v. Lerner, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980). When the presumptive reasonableness of an ordinance is challenged by probative evidence of its unreasonableness, the municipality must present evidence that the ordinance is reasonable. If the evidence of reasonableness is sufficient to render the issue fairly debatable, the ordinance must be sustained. However, if such evidence is insufficient to make the issue fairly debatable, the evidence of unreasonableness defeats the presumption and the ordinance cannot be sustained. Tidewater, 241 Va. at 122, 400 S.E.2d at 528; Town of Narrows, 227 Va. at 280-81, 315 S.E.2d at 840; Board of Supervisors v. Snell Constr. Corp., 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974).

We accord the trial court's ruling on this issue a presumption of correctness. We also give full credit to the presumption of validity of the 1991 Ordinance and examine the record to determine whether the evidence supports the court's ruling. Twietmeyer, 255 Va. at 391, 497 S.E.2d at 860; Town of Narrows, 227 Va. at 281, 315 S.E.2d at 840; see Tidewater, 241 Va. at 122, 400 S.E.2d at 528.

Applying these principles, we conclude that the evidence supports the trial court's ruling that the City's evidence of the reasonableness of the 1991 Ordinance classifications was sufficient to make the issue fairly debatable. The City

16

presented evidence that it was impractical to weigh refuse at the point of collection.  The evidence also showed that the fee for an apartment complex was based on a charge per residential unit to account for the greater volume of waste generated by this type of facility.  The fee charged for other types of residential dwellings, such as rooming houses and single family residences, also was based on a per unit basis.

Although the size of Mountain View's "dumpsters" was the same as those used by some businesses, there was no evidence that the amount of waste generated by these facilities was the same.  Thus, we conclude that the record supports the trial court's ruling that the 1991 Ordinance was valid because the evidence of reasonableness of the classifications was fairly debatable.

For these reasons, we will affirm the trial court's judgment.

Affirmed.