COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia


ANNE EDWARDS HARTLEY, ET AL.

                                              OPINION BY
v.        Record No. 1298-22-2        JUDGE DANIEL E. ORTIZ
                                          FEBRUARY 13, 2024

BOARD OF SUPERVISORS OF
 BRUNSWICK COUNTY, VIRGINIA


FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Allan Sharrett, Judge[1]

John M. Janson for appellants.

Andrew R. McRoberts (Christopher M. Mackenzie; Paul C.
Jacobson; Sands Anderson PC, on brief), for appellee.


Appellants Anne Hartley and the Prospect Cemetery Association (collectively, "Hartley")

seek to reverse the decision of the Brunswick County Board of Supervisors rezoning a

neighboring property from agricultural to business use to allow the development of a Dollar

General store. The circuit court dismissed several of Hartley's claims on demurrer and granted

the Board's motion for summary judgment as to the rest. On appeal, Hartley raises three

categories of claims: (1) that the circuit court erred in granting summary judgment because the

Board's decision to upzone the property was not "fairly debatable," (2) that the circuit court

erred in denying Hartley a continuance to allow further time for briefing on summary judgment

and to allow further discovery before ending the case on the merits, and (3) that the circuit court

erred in partially granting the Board's demurrer. Because the Board adduced "some evidence of

_____

[1] The Honorable Carson E. Saunders, Jr. partially sustained the demurrer that is
challenged here as appellants' assignment of error six. The Honorable W. Allan Sharrett issued
the final order, granting summary judgment to the Board of Supervisors.

reasonableness" to support the decision to upzone the property, we must defer to the Board's legislative judgment, and thus we affirm the judgment of the circuit court on all counts.

BACKGROUND[2]

On October 7, 2019, Par 5 Development Group, LLC filed a land use application ("upzoning application") in Brunswick County, seeking an amendment to the Brunswick County zoning ordinance that would re-classify 2.04 acres of land ("Dollar General property") from A-1 agricultural ("A-1") to B-1 business ("B-1") use. Par 5 sought to develop a 9,100-square-foot Dollar General retail store on a segment of an existing 8.36-acre parcel of land in the town of Ebony. The Dollar General property has not been subdivided from the full parcel. The upzoning application noted that infrastructure for the building, including access roads, water, and sewer facilities, would be privately constructed.

Ebony is a small, rural community that is primarily zoned as A-1 based on the Brunswick County Comprehensive Plan 2037. The plan lays out the County's vision to "be a regional leader in small business development, progressive industry, livable neighborhoods, sustainable agriculture, and extraordinary tourism experiences." The County also aims to "be a destination for specialized commerce and employment with thriving business parks and downtown business districts in [designated towns]." It hopes to create an "inviting community" for people who "cherish the community's heritage and history, friendly atmosphere, comfortable lifestyles, exceptional education system, scenic landscapes, prized agricultural soils, and outstanding parks, trails, rivers and lakes." The plan, running longer than one hundred pages, is organized around

---

[2] This appeal follows the circuit court's grant of summary judgment. We thus review the facts based only on the pleadings, attached exhibits, and party admissions. *See* Rule 3:20. The pleadings also include the legislative record, incorporated by the Board's successful motion craving oyer, which Hartley does not challenge here. *See Byrne v. City of Alexandria*, 298 Va. 694, 700-02 (2020).

four directives: (1) resilient communities; (2) dynamic economic growth; (3) preserved natural and cultural heritage; and (4) managed land use and development.

The comprehensive plan mentions Ebony only a few times: to describe the fire department, note the presence of a century farm, and highlight comments from Ebony citizens about light pollution. The plan groups Ebony with Gasburg and Lake Gaston as part of the "South County Planning Area," a "general growth area[]" that "continue[s] to represent good direction for land development in the future." On the current and future uses map, Ebony appears in an agricultural area, though the existing uses map reflects a few business zones at the heart of Ebony. On the future uses map, nearby Gasburg is designated for "[c]ommunity [b]usiness" uses, described as "small business development in key crossroad locations to serve the surrounding community . . . in existing commercial buildings or in new buildings of 5,000 square feet or less." Gasburg is also marked as a "[c]orridor [b]usiness [o]pportunity," which "may include grocery stores, lodging, convenience/gas stations," and similar commercial uses.

The Dollar General property is located at a three-way intersection neighboring Hartley's 69-acre property, a historic family farm and organic farming operation. Prospect Cemetery Association, the other appellant here, oversees the Prospect Cemetery, which neighbors the Dollar General property to the south. The local area includes two local general stores—Ebony General and the 903 Race-In—Homestead Antiques, the Ebony Fire Department, the Ebony Post Office, Carroll Family Logging, and several historic homes.[3] About four acres of Hartley's

---

[3] The surrounding businesses variously operate in A-1 zones either as of right or with conditional use permits, or B-1 zones, often with proffered conditions on permitted uses.

property were also upzoned to B-1 in 2003 for use in a small electric boat business that never materialized, and remain zoned as B-1.[4]

In November 2019, the Brunswick County Planning Commission held a public hearing on the upzoning application. Planning Commission staff recommended that the Planning Commission approve the upzoning if it found the rezoning to be in accord with the comprehensive plan. After sixteen individuals spoke in opposition to the upzoning request, and two spoke in favor, a commissioner moved to deny the upzoning application, but the vote was deferred pending Virginia Department of Transportation ("VDOT") approval of the application. Soon thereafter, VDOT issued a letter stating that it had completed its necessary review and that the site proposal complied with regulations. The Planning Commission held a second hearing in December 2019, during which it approved the upzoning application in an 8-1 vote, referring the issue to the Board.

In January 2020, the Board—appellee here—held a hearing on the upzoning application. The Board received letters and signed petitions both favoring and opposing the upzoning decision. Public submissions worried about the Dollar General's visual blight, misalignment with the agricultural setting, bright lighting, increased traffic, negative effect on tourism, and possible economic impact on existing businesses. Hartley's complaint alleges that the Board failed to properly consider traffic safety around the Dollar General property.[5] The Board also

---

[4] Hartley seeks to have that property downzoned to A-1 in the companion case, *Hartley v. Board of Supervisors of Brunswick County, Virginia*, No. 1303-22-2 (Va. Ct. App. Feb. 13, 2024). Though we note many legal similarities between the two cases, because we find that the factual circumstances are distinct, we deny the Board's motion to consolidate the two cases. We also hereby deny Hartley's motion to transfer this case to the Supreme Court.

[5] She alleges that the intersection in front of the Dollar General property is unsafe because the entrance to the proposed store does not allow for a 500-foot line of sight at 3.5 feet above ground, per VDOT requirements, and the intersection has a history of crashes. The store would generate an estimated 578 trips per day, perhaps more during the peak summer tourist

received a letter from Par 5 outlining the likely economic benefits of the new Dollar General store. Following public comments, the Board voted 3-2 to approve the upzoning application ("the upzoning decision").

Hartley appealed the upzoning decision to the circuit court on February 28, 2020. Following a circuit court ruling sustaining the Board's demurrer and dismissing the complaint, Hartley filed an amended complaint, to which the Board filed a second demurrer and a motion craving oyer of the entire legislative record before the Board.[6] The circuit court partially sustained that demurrer, finding that Hartley's allegations on several grounds could not support her claim that the Board's upzoning decision was arbitrary and capricious.[7] The court denied the demurrer as to Hartley's claims that the upzoning decision was arbitrary and capricious based on her allegations that (1) the decision failed to align with the comprehensive plan and (2) the Board failed to consider the factors listed in Code §§ 15.2-2283 and -2284.

In early 2022, both parties filed praecipes stating that the matter had matured for trial. The Board filed a notice of hearing on March 15, 2022, requesting that a pretrial conference and hearing on a summary judgment motion, which had not yet been filed, be set for June 3, 2022. The Board then moved for summary judgment on May 12, 2022. Hartley filed a motion for a stay of summary judgment proceedings and a motion for an order sequencing discovery on May 23, 2022. On June 3, 2022, the circuit court held a hearing on the motion for summary

---

season. Based on the relatively low estimated traffic impact, VDOT and the Planning Commission did not conduct a full traffic study.

[6] The first demurrer is not at issue in this appeal.

[7] Here, Hartley appeals only the circuit court's dismissal of her claims based on alleged violation of the VDOT guidelines, alleged violation of the Brunswick County subdivision ordinance, and the Board's authority to re-zone directly from A-1 to B-1.

judgment.[8]  Following the hearing, both parties submitted briefs on the motion.  The circuit court

granted the Board's motion for summary judgment in a final order dated August 18, 2022.

Hartley appeals.

ANALYSIS

I. Reasonableness of the Upzoning Decision

Hartley first challenges the circuit court's grant of summary judgment for the Board,

arguing that the upzoning decision was invalid for failure to follow statutory zoning procedures

and substantively unreasonable.  In evaluating a motion for summary judgment, a court may

review only "the pleadings, the orders, if any, made at a pretrial conference, [and] the

admissions, if any, in the proceedings."  Rule 3:20.  Summary judgment is not appropriate if

"any material fact is genuinely in dispute."  *Id.*  On appeal, "we review the record applying the

same standard the trial court must adopt in reviewing a motion for summary judgment, accepting

as true 'those inferences from the facts that are most favorable to the nonmoving party, unless

---

[8] We note that the briefs of both parties discuss statements made during the June 3, 2022 hearing.  Because the transcript of the hearing was not timely filed, we may not consider it here. *See* Rule 5A:8(a) ("The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment."); *Smith v. Commonwealth*, 32 Va. App. 766, 771 (2000).

The absence of the transcript, however, does not affect our ability to evaluate the merits of Hartley's claims on appeal.  "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to."  *Smith*, 32 Va. App. at 771 (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)).  Yet because our review of a grant of summary judgment is limited to the pleadings, exhibits, and admissions, and the circuit court's reasoning is memorialized in a written opinion letter and order, a transcript is not indispensable to our review of the court's grant of summary judgment (Hartley's assignments of error one, four, and five). *See id.*; *see also* Rule 3:20 (laying out summary judgment standard).  Further, Hartley's arguments regarding the timing of summary judgment are laid out in her motion for a continuance and stay and the factual timeline of the parties' filings are apparent from the record. We may thus consider her arguments regarding the timing of the court's summary judgment order (assignments of error two and three), notwithstanding the absence of a transcript.  *See Smith*, 32 Va. App. at 771.  Hartley's assignment of error six relates to the circuit court's partial grant of the Board's demurrer, for which the June 3, 2022 transcript also has no bearing.

the inferences are forced, strained, or contrary to reason.'" *Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 484 (2003) (quoting *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 136 (2001)).

Legislative actions, such as the grant or denial of an application for rezoning, are presumed to be reasonable both upon review before the circuit court and upon appeal. *See Bd. of Supervisors v. Lerner*, 221 Va. 30, 34 (1980). Reasonableness, in turn, depends on whether "the matter in issue is fairly debatable"—whether objective and reasonable people may logically arrive at different conclusions about the correct result. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 532 (2003) (quoting *Lerner*, 221 Va. at 34). The Supreme Court has summarized this reasonableness standard in a burden-shifting framework:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness and the [legislative action] cannot be sustained.

*Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974). Under the fairly debatable standard, "the question is whether there is *any evidence in the record sufficiently probative* to make a fairly debatable issue of the Board's decision." *Town of Leesburg v. Giordano*, 280 Va. 597, 608 (2010) (emphasis added) (quoting *Bd. of Supervisors v. Stickley*, 263 Va. 1, 11 (2002)). This same standard applies on motions for summary judgment. *See Newberry Station Homeowners Ass'n, Inc. v. Bd. of Supervisors*, 285 Va. 604, 626 (2013). Yet, legislative action taken "in violation of an existing ordinance" or other binding source of law is by definition arbitrary and capricious and may not be sustained by a court. *Id.* at 621.

Unlike legislative judgments, we review questions of statutory interpretation de novo. *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020).

## A. Role of the Comprehensive Plan

Hartley first asserts that the Board's decision was unreasonable as a matter of law because it deviated from the comprehensive plan. Code § 15.2-2223 directs each local planning commission to prepare a comprehensive plan "with the purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the territory." Code § 15.2-2223(A). Such plan "shall be general in nature." *Id.* The Code also provides that a comprehensive plan "shall control the general or approximate location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). Feature is not specifically defined in the statute. *See id.*; *see also* Code § 15.2-2201 (definitions section). Yet the statute continues by stating that "unless a feature is already shown on the adopted master plan . . . no street or connection to an existing street, park or other public area, public building or public structure . . . shall be constructed, established or authorized" without the planning commission confirming that it is "substantially in accord" with the comprehensive plan. Code § 15.2-2232(A). Thus, "[i]n the language of the Code, these public facilities are known as 'features.'" *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 570 (2021).[9] As applied to private facilities, a comprehensive plan is generally "a guideline for the development and implementation of a zoning ordinance" and "does not, by itself, act as an instrument of land use control." 1987-88 Op. Va. Att'y Gen. 212, 213. This also aligns with the language of Code § 15.2-2284, which states that "[z]oning ordinances and districts shall be drawn and applied *with reasonable consideration* for the existing use and character of property, the comprehensive plan," and fifteen other factors. (Emphasis added).

---

[9] A letter opinion of the Attorney General similarly clarifies that "[a] comprehensive plan . . . acts as an indirect instrument of land use control with respect to [public facilities]. The location, charter and extent of such public facilities must be submitted and approved" based on consistency with the comprehensive plan. 1987-88 Op. Va. Att'y Gen. 212, 213 (citation omitted). Though such opinions are "not binding on this Court, an Opinion of the Attorney General is 'entitled to due consideration.'" *Beck v. Shelton*, 267 Va. 482, 492 (2004) (quoting *Twietmeyer v. City of Hampton*, 255 Va. 387, 393 (1998)).

The "minimum standards of the [c]omprehensive [p]lan may be only guidelines and not requirements to be applied inflexibly," while the local zoning body has "discretion to decide whether to adhere to those standards or to follow some other reasonable approach" in evaluating individual rezoning applications.[10] *Lerner*, 221 Va. at 37.

Hartley asserts that a higher standard of review should apply here, because she incorrectly reads Code § 15.2-2232 to require private facilities such as the Dollar General to be "substantially in accord" with the comprehensive plan.[11] She also argues that if a proposed private facility is not "substantially in accord" with the comprehensive plan, the County must amend the plan under Code § 15.2-2229 before approving the zoning amendment. This is incorrect. Rather, alignment with the comprehensive plan is only one of several statutory factors that a legislative body must consider in amending its zoning ordinance. *See* Code § 15.2-2283. Failure to align with the comprehensive plan does not render a zoning amendment arbitrary and capricious as a matter of law; rather, a reviewing court must "apply the presumption of validity" to the legislative action and evaluate whether the change was supported by some evidence of reasonableness. *See Newberry Station*, 285 Va. at 621-23.

---

[10] Hartley also argues that *Riverview Farm Associates Virginia General Partnership v. Board of Supervisors*, 259 Va. 419, 428 (2000), shows that comprehensive plans are binding even as to private development. However, that case only shows that under Code § 15.2-2297(A)(viii), any *proffered conditions* made with a rezoning application must be consistent with the comprehensive plan. *See id.* This case involves no proffered conditions, and thus *Riverview* is not applicable.

[11] At oral argument, Hartley also proposed that the entire town of Ebony might be considered a statutory "feature" which must be developed in substantial accord with the comprehensive plan. While the record makes clear that Ebony is a beautiful, scenic community, deeply beloved by its residents, such an interpretation is inconsistent with the statutory language of Code § 15.2-2232.

B.  Weighing Statutory Factors

Hartley next contends that the upzoning decision was arbitrary and capricious because no evidence shows that the Board weighed the factors listed in Code §§ 15.2-2283 and -2284. These code sections list myriad factors to which a locality "shall . . . give reasonable consideration" when drafting zoning ordinances and amending zoning districts.  Code § 15.2-2283.  Describing an older version of these code sections, the Supreme Court wrote that "[t]hese sections set out the purpose of the zoning ordinances and . . . factors which a zoning authority must consider when taking zoning actions.  The weighing of the relevant factors is a legislative function . . . .  On judicial review, a court is limited to a determination whether the decision . . . was reasonable." *Bd. of Supervisors v. Miller & Smith, Inc.*, 242 Va. 382, 384 (1991).

Hartley relies on *Newberry Station Homeowners Association, Inc. v. Board of Supervisors* for the proposition that the Board must have considered the factors listed in Code §§ 15.2-2283 and -2284.  *See* 285 Va. 604.  She asserts that the absence of specific evidence that the Board evaluated specific factors precludes summary judgment.  Hartley's reliance is misplaced.  In *Newberry Station*, the Supreme Court noted that

> while a local governing body acts arbitrarily and capriciously when it acts outside the scope of the authority conferred by the zoning ordinance, and the resulting action is void, we apply the presumption of validity when we review whether the local governing body adequately considered the standards set forth in the zoning ordinance.

*Id.* at 622-23 (internal citation omitted).  The Supreme Court then applied the traditional burden-shifting reasonableness analysis for evaluating legislative actions.  *Id.* at 623.  The Court evaluated the reasonableness of the board's decision based on the factors laid out in the zoning ordinance.  *Id.* at 623-26.  However, there is no indication that the Court required the locality to record its evaluation of the ordinance factors.  *See id.*  Similarly, the lack of specific evidence

that the Board considered the statutory factors in Code §§ 15.2-2283 and -2284 is not dispositive here. Failure to consider the statutory factors on the record does not render a legislative decision arbitrary and capricious as a matter of law. We must instead evaluate only whether the Board's decision was fairly debatable in the context of the required statutory factors.

C. Reasonableness of the Upzoning Decision

Having rejected Hartley's procedural challenges to the Board's decision, we must determine whether the substance of the upzoning decision was arbitrary and capricious. Hartley argues that, had the Board properly evaluated the upzoning decision under the factors in Code §§ 15.2-2283 and -2284, it would have been impossible to conclude that the upzoning was proper. We begin with a presumption that the Board's upzoning decision was reasonable. *See Snell Constr. Corp.*, 214 Va. at 659. Hartley must then put forward "probative evidence of unreasonableness," which the Board may meet with "some evidence of reasonableness," sufficient to make the question "fairly debatable." *See id.* We presume that the Board was "cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to their action," such that we may consider evidence of reasonableness in the pleadings, exhibits, and admissions—even if it was not before the Board in the legislative record. *Indus. Dev. Auth. v. La France Cleaners & Laundry Corp.*, 216 Va. 277, 282 (1975).

The reasonableness of a zoning decision must be evaluated in the context of the purposes of zoning ordinances:

> [Zoning] ordinances shall be designed to give reasonable
> consideration to each of the following purposes, where applicable:
> (i) to provide for adequate light, air, convenience of access, and
> safety from fire, flood, impounding structure failure, crime and
> other dangers; (ii) to reduce or prevent congestion in the public
> streets; (iii) to facilitate the creation of a convenient, attractive and
> harmonious community; . . . (v) to protect against destruction of or
> encroachment upon historic areas . . . ; (vi) to protect against . . .

- 11 -

overcrowding of land, undue density of population in relation to
the community facilities existing or available, obstruction of light
and air, danger and congestion in travel and transportation . . . ;
(vii) to encourage economic development activities that provide
desirable employment and enlarge the tax base; [and] (viii) to
provide for the preservation of agricultural and forestal lands
. . . for the protection of the natural environment.

Code § 15.2-2283. Code § 15.2-2284 similarly offers several factors to which localities must give "reasonable consideration" in drafting zoning ordinances.[12] These purposes often conflict with one another, with the legislature delegating to local bodies to further these goals in each unique zoning decision. Further, the use of "where applicable" in Code § 15.2-2283 indicates that the legislature understood that some factors would at times be irrelevant and some factors would weigh heavier than others in certain local contexts.

On appeal, Hartley claims that the Board's decision to upzone the Dollar General property was unreasonable because of the Board's "complete disregard [for] the [comprehensive] [p]lan." As discussed above, Hartley misunderstands the role of the comprehensive plan in guiding Board decision-making. Assuming without deciding that the Board's upzoning decision is in fact inconsistent with the comprehensive plan, that fact alone is not enough to meet Hartley's burden of showing "probative evidence of unreasonableness." *Snell Constr. Corp.*,

---

[12] Such factors include:

the existing use and character of property, the comprehensive plan,
the suitability of property for various uses, the trends of growth or
change, the current and future requirements of the community as to
land . . . the transportation requirements of the community, the
requirements for airports, housing, schools, parks, playgrounds,
recreation areas and other public services, the conservation of
natural resources, the preservation of flood plains, the protection of
life and property from impounding structure failures, the
preservation of agricultural and forestal land, the conservation of
properties and their values and the encouragement of the most
appropriate use of land throughout the locality.

Code § 15.2-2284.

214 Va. at 659; *see also Lerner*, 221 Va. at 37. Hartley's complaint alleges pages of possible grounds on which the Board could have denied the rezoning petition. She argues that building a large retail store will be inconsistent with the idyllic character of the surrounding area. She disputes the framing of existing businesses in Ebony as anything more than "rural retail," a far cry from the massive store to be developed on the Dollar General property. She submits that though a few properties in the surrounding area are zoned B-1, they are either not used for business purposes or are for "limited" uses, more suited to the agricultural region. She alleges that the upzoning will undercut tourism, a key economic driver in Ebony. The legislative record also overflows with evidence that could have led the Board to deny the upzoning application. Rezoning opponents submitted to the Board a petition and multiple letters opposing the upzoning, reflecting concerns about the encroachment of light pollution, traffic, and visual blight on their scenic community. Many citizens testified to the Board and the Planning Commission of their opposition to the development in their community. The Ebony Preservation Group submitted materials to the Board including research on the detrimental effect of Dollar General stores on rural communities. They also noted the economic risks to existing stores and the proliferation of dollar stores nearby.

Yet, even assuming that Hartley's evidence is sufficient "probative evidence of unreasonableness," the Board met its burden to put forward "some evidence of reasonableness" in response. *See Snell Constr. Corp.*, 214 Va. at 659. The upzoning decision mirrored the recommendation of the Planning Commission, whose staff found the change "to be in general accord with the [c]omprehensive [p]lan." In coming to that conclusion, the Planning Commission staff noted the emphasis in the comprehensive plan on attracting new economic development and the location of the property across the street from other B-1 zoned properties,

- 13 -

including a convenience store.[13]  The Board also received a letter from counsel for Par 5 outlining the likely economic benefits of approving the upzoning.  The Planning Commission and Board heard several public comments from individuals both in favor of and opposed to the proposed upzoning.  The Board received a petition signed by 226 individuals supporting the rezoning, petitions opposing the rezoning, and many letters on both sides of the debate, though the majority seemed to disfavor the upzoning decision.  Despite allegations of traffic dangers, VDOT did not oppose the upzoning.  Each of these considerations suggests that reasonable people, evaluating the statutory charges to "facilitate the creation of a convenient, attractive and harmonious community" and "encourage economic development," and balancing them against concerns about light, convenience, and traffic congestion, could disagree as to whether to rezone the property.  *See* Code § 15.2-2283.

A motion for summary judgment must be denied if there is any genuine dispute as to a material fact.  Rule 3:20.  But where the Board has put on "some evidence of reasonableness," no other issue is material.  *See Klaiber*, 266 Va. at 484; *Newberry Station*, 285 Va. at 626.  Despite disputes on several points of evidence about the characterization of the community, the Board's intentions in upzoning the property, the likely economic effects of the upzoning, and many other issues, Hartley fails to show a genuine dispute of material fact that would allow us to find the issue was not "fairly debatable."  Therefore, we must affirm the decision of the Board.

## II.  Timing of Summary Judgment

Hartley's second set of arguments relates to the denial of a motion for a continuance of the hearing on the Board's motion for summary judgment.  Hartley argues that (1) the circuit court erred because the hearing permitted Hartley insufficient time to respond to the motion, in

_____

[13] The comprehensive plan also designates the South County Planning Area—including Ebony, Gasburg, and Lake Gaston—as "general growth areas" that "continue to represent good direction for land development in the future."

- 14 -

violation of Rules 3:8(b) and 4:15(c), and (2) the court erred because of the timing of pretrial discovery. The denial of a continuance is reviewed on appeal for an abuse of discretion and resulting prejudice to the moving party, "in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). Further, "when a circuit court's refusal to grant a continuance 'seriously imperil[s] the just determination of the cause,' the judgment must be reversed." *Id.* (alteration in original).

> An abuse of discretion occurs "only 'when reasonable jurists could not differ'" as to the proper decision. This highly deferential standard of review "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." The circuit court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law."

*Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764-65 (2014) (first quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008); then quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013); and then quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). We review questions of law de novo. *Brown v. Commonwealth*, 68 Va. App. 44, 51 (2017).

### A. Application of Rules 3:8(b) and 4:15(c)

Hartley first argues that the circuit court erred when it denied Hartley's motion for a continuance because the court held the June 3, 2022 hearing only 22 days after the Board moved for summary judgment on May 12, 2022. Combining Rules 3:8(b) and 4:15(c), Hartley argues that such motions must be filed at least 28 days before the scheduled hearing. Rule 3:8(b) specifies that following the denial of a demurrer, or the grant of a motion craving oyer, the defendant has 21 days to file an answer. *See* Rule 3:8(b). The rule has no applicability to motions for summary judgment, which are addressed under Rule 4:15(c). That rule leaves the court with the discretion to set a briefing schedule for briefs longer than five pages, though it requires shorter briefs to be filed at least 14 days in advance of a hearing, with responses due

seven days in advance. Rule 4:15(c). Hartley asserts that the rule should be read cumulatively, with the seven-day quiet period before the hearing added to any court-ordered time for responding to the brief (which she erroneously views as 21 days based on Rule 3:8(b)). Ultimately, the rules suggest that the court has complete discretion to set the hearing and briefing schedule here. We cannot say that the court abused its discretion by proceeding to hold the hearing on summary judgment, particularly where the court also ordered both parties to provide supplemental briefing on the issue before it ruled.

### B. Grant of Summary Judgment as Related to Discovery

Hartley also argues that under the circumstances, the circuit court's grant of summary judgment was premature because it denied Hartley the opportunity to complete the discovery necessary to fully develop her theory of the case and gather evidence sufficient to prove her claims. "A trial court may enter summary judgment only if no material fact is genuinely in dispute." *Renner v. Stafford*, 245 Va. 351, 353 (1993); *see also* Rule 3:20. Summary judgment is not "intended to substitute a new method for trial when an issue of fact exists," but rather may "permit trial courts to end litigation at an early stage provided it *clearly* appears that one of the parties is entitled to a judgment in the case as made out by the pleadings and the parties' admissions." *Renner*, 245 Va. at 353.

Here, Hartley asserts several avenues of factual discovery that she would have explored, given more time, including the Board's alleged retroactive changes to the 2022 zoning map and the Board's legal understanding of its obligations under the comprehensive plan. Yet, the only *material* factual issue in this case is whether "some evidence of reasonableness" supported the upzoning decision. *See Snell Constr. Corp.*, 214 Va. at 659. Other arguments about the Board's possible motives or the zoning status of neighboring properties are not material to that inquiry, as they cannot refute the evidence that the Board has put forward that the upzoning decision was

reasonable.  Without some procedural defect, the Board's good showing of justification for the

upzoning decision meant that the Board was "clearly" entitled to a judgment in the case.  *See*

*Renner*, 245 Va. at 353.  Thus, summary judgment was appropriate and the circuit court did not

err in denying Hartley a continuance.

## III.  Demurrer

Hartley's final assignment of error asserts that the circuit court erred when it dismissed

on demurrer Hartley's claims that the Board violated its procedural obligations under (1) the

VDOT guidelines, (2) the Brunswick County subdivision ordinance, and (3) the Brunswick

County zoning ordinance.[14]  We review the grant of a demurrer de novo.  *La Bella Dona Skin*

*Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 255 (2017).  "If the pleading fails to state a

cause of action, then the demurrer should be sustained."  *Id.*  At the demurrer stage, we must take

as true all material facts properly pleaded.  *Harris v. Kreutzer*, 271 Va. 188, 195 (2006).  At this

stage, we may also consider any exhibits included in the pleadings, including the legislative

record brought in by the motion craving oyer.  *Byrne v. City of Alexandria*, 298 Va. 694, 700-02

(2020).

### A.  VDOT Guidelines

Hartley first alleges that the Board failed to follow VDOT guidelines and conduct a

traffic impact analysis, making the upzoning decision unreasonable as a matter of law.  Code

---

[14] The Board asserts that these claims are barred because Hartley's notice of appeal states that she appealed only from the circuit court's summary judgment order, entered August 18, 2022, and not the court's earlier order on the demurrer, entered October 26, 2021.  Hartley had no obligation, or right, to take an interlocutory appeal of the order sustaining the demurrer; her proper course was to wait until the final order in the case before bringing this appeal.  *See* Code § 17.1-405 (outlining the appellate jurisdiction of this Court); Code § 8.01-675.5(C) ("The failure of a party to seek interlocutory review under this section shall not preclude review of the issue on appeal from a final order."); *see also de Haan v. de Haan*, 54 Va. App. 428, 439-42 (2009) (detailing the history and statutory basis for appellate review of interlocutory orders).  We thus may review her claim on the merits.

§ 15.2-2283 states that one purpose, among many, of zoning ordinances is to "reduce or prevent congestion in the public streets." Code § 15.2-2283(ii). The Code also mandates that when a locality seeks to amend its zoning ordinance, the locality must submit the proposal to VDOT within 10 business days "if the proposal will substantially affect transportation on state-controlled highways." Code § 15.2-2222.1(B). The submission must "include a traffic impact statement if required by local ordinance or pursuant to [VDOT] regulations." *Id.* While the zoning ordinance here does not require a traffic impact statement, VDOT regulations require a traffic study for a rezoning proposal "if the proposal generates more than 5,000 vehicle trips per day at the site's connection to a state-controlled highway." 24 VAC 30-155-40(A)(1). Hartley highlights provisions in the VDOT guidelines that require counting vehicle trips during the summer, the busy season, rather than the fall, as was allegedly done here. Thus, though she alleges that, as measured, the proposed Dollar General will generate about 578 trips per day, she argues that this underrepresents the traffic impact of the new store, though she does not expressly allege that the trip count will exceed 5,000, as required to impose a traffic impact statement. There is also no evidence in the record by which this Court may gauge the expected increase in traffic during the summer. She also argues that the proposed entrance to the Dollar General does not meet VDOT line-of-sight requirements.

The VDOT guidance documents do not have the "force of law." *See Va. Ret. Sys. v. Shelton*, 76 Va. App. 167, 182 (2022). Thus, even if VDOT should have conducted a separate trip count in the summer per its own guidelines, or the line-of-sight requirement is not satisfied, this defect would not invalidate the Board's decision. Further, the Board could reasonably rely on VDOT's representation that the proposal satisfied its own regulations. Because any deviation from the guidelines does not violate the Board's obligations under the law, Hartley's allegations

simply go to the upzoning decision's reasonableness and do not state an independent claim. The circuit court thus did not err in sustaining the demurrer here.

## B.  Subdivision Ordinance

Hartley also alleges that the circuit court erred in granting the demurrer as to her claim that the Board's upzoning decision was unreasonable because it violated the Brunswick County subdivision ordinance. Hartley highlights sections of the subdivision ordinance that mandate an application to formally subdivide a parcel if it is divided into three or more lots or parcels. *See* Brunswick Cnty. Subdivision Ordinance arts. 2-32; 4-4. She points to a provision that bars an administrator from issuing a building permit "unless and until" the land has been properly subdivided. *Id.* art. 7-2-3. Yet Hartley provides no section in which that ordinance or the zoning ordinance requires that a property be subdivided before it may be *rezoned*. Rather, the two processes are entirely separate. Thus, though the subdivision ordinance may be binding, it does not apply here and the circuit court properly granted the demurrer on this count.

## C.  Zoning Ordinance

Finally, Hartley asserts that the circuit court erred in granting the demurrer as to her claims that the Board violated its own zoning ordinance when it directly rezoned the Dollar General property from A-1 to B-1. Nowhere in the cited sections does the zoning ordinance prohibit direct re-zoning from A-1 to B-1. *See* Brunswick Cnty. Zoning Ordinance arts. 2-1, 4, 4-1-18, 9, 9-1-1. While Hartley correctly notes that within A-1 districts, retail stores are permitted only with conditional use permits, this in no way limits the Board's ability to amend its zoning ordinance to re-zone a district to B-1. Hartley has pointed to no authority that restricts the Board's general power to amend its zoning map. *See* Code § 15.2-2286(A)(7); Brunswick Cnty. Zoning Ordinance art. 32-1. The zoning ordinance expressly allows the Board to "amend[], supplement[], change[], modif[y], or repeal[]" the zoning "boundaries" laid out in the

ordinance "from time to time." Brunswick Cnty. Zoning Ordinance art. 32-1. Ultimately, lacking any legal grounding, Hartley fails to state a claim and thus the circuit court did not err in granting the Board's demurrer.

CONCLUSION

Though Hartley makes several meaningful allegations that the upzoning decision was unreasonable, the Board meets these arguments with several reasonable bases for the upzoning decision—including economic development prospects, support from some members of the community, and the location of other businesses—albeit of a smaller scale—near the property. Because the Board produced "some evidence of reasonableness," the circuit court properly granted both the Board's demurrer and its motion for summary judgment. Further, because no discovery or delay in granting the motion for summary judgment could have changed the result, the circuit court did not err in denying Hartley's motion for a continuance. We thus affirm the judgment of the circuit court.

*Affirmed.*