COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Raphael
Argued by teleconference

**PUBLISHED**

LEROY VANMETER, JR.

v.      Record No. 0505-23-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STUART A. RAPHAEL
FEBRUARY 27, 2024

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

Leroy Vanmeter, Jr., *pro se*.

(Jason S. Miyares, Attorney General; Timothy E. Davis, Assistant
Attorney General, on brief), for appellee.  Appellee submitting on
brief.

Leroy Vanmeter, Jr., is an inmate employed by the Virginia Department of Corrections

doing janitorial work at the prison where he is serving his sentence.  He claims that his work

amounts to "community service work" under Code § 19.2-354(C)(ii) for which he should receive

credit toward the costs imposed by the trial court at sentencing.  He appeals the trial court's

decision rejecting his interpretation of the statute and dismissing his claim.  Although the trial

court had jurisdiction to consider Vanmeter's argument, we find that his claim fails on the

merits.  The plain language of Code § 19.2-354(C)(ii) does not permit an inmate's work for the

Virginia Department of Corrections to count as community-service work that offsets the inmate's

fine or costs.  So we affirm the judgment.

BACKGROUND

In April 2019, Vanmeter pleaded guilty in the Circuit Court of Washington County to

more than 70 felonies, including abduction, distributing a Schedule II controlled substance to a

minor, producing child pornography, and indecent liberties by a custodian. On August 26, 2019, Vanmeter (then-age 46) was sentenced to a total of 1,240 years of imprisonment with 1,180 years suspended—an active sentence of 60 years. The sentencing order, among other things, required Vanmeter to pay costs of $29,350, with $50 due monthly within 60 days of his release from incarceration.[1] The sentencing order did not impose any fine. In October 2020, a three-judge panel of this Court denied Vanmeter's petition for appeal as frivolous and permitted his counsel to withdraw from further representation. *Vanmeter v. Commonwealth*, No. 1883-19-3 (Va. Ct. App. Oct. 26, 2020) (order). Vanmeter is currently housed at the River North Correctional Center, a prison operated by the Virginia Department of Corrections.

Before July 1, 2020, Code § 19.2-354(C) provided that the circuit court "shall establish a program and may provide an option to any person upon whom a fine and costs have been imposed to discharge all or part of the fine or costs by earning credits for the performance of community service work *before or after imprisonment*." Code § 19.2-354 (Supp. 2020) (emphasis added). But effective July 1, 2020, Code § 19.2-354(C)(ii) was added to permit credit for community-service work performed "during imprisonment" if "in accordance with the provisions of § 19.2-316.4, 53.1-59, 53.1-60, 53.1-128, 53.1-129, or 53.1-131." 2020 Va. Acts chs. 25 (HB 277), 188 (SB 736). None of those six provisions, however, addresses an inmate's work for the Virginia Department of Corrections at the prison where the inmate is housed.

On January 26, 2023, citing the 2020 amendment, Vanmeter filed a "request" with the circuit court to offset the costs he owed under his sentencing order by the value of the work he

---

[1] Although Vanmeter "faces a lengthy term of incarceration, and therefore will not soon return to the communities where he perpetrated his crimes, he is eligible for possible release" under Code § 53.1-40.01. *Jordan v. Commonwealth*, 295 Va. 70, 76 (2018). Code § 53.1-40.01 makes eligible for conditional (or "geriatric") release "[a]ny person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, . . . (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence."

performed for the Department. He represented that he worked more than 30 hours per week at the prison at the rate of 45 cents an hour. Stating that the minimum wage was $9.50 an hour, Vanmeter requested that the court "apply [his] VA DOC hours in lieu of community service at a minimum wage of $9.50/hr." At oral argument here, Vanmeter clarified that he seeks credit toward his costs only for the difference between the minimum wage and the amount he is actually paid for his work.

Treating Vanmeter's *pro se* request as a motion, the trial court summarily denied it on February 17, 2023.[2] The court found "no provision of law that authorizes the Court to give community service credit for work [that] is compensated by the Virginia Department of Corrections, while the defendant is incarcerated within a Virginia Department of Corrections facility." Vanmeter noted a timely appeal.

ANALYSIS

The Commonwealth argues that we lack jurisdiction over Vanmeter's claim and that, in any case, Code § 19.2-354(C)(ii) does not authorize community-service credit toward Vanmeter's obligation to pay costs under the sentencing order. Both issues involve questions of statutory interpretation that we consider de novo. *E.g.*, *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017).

*A. Jurisdiction is proper.*

The Commonwealth argues that the trial court lacked jurisdiction to consider Vanmeter's motion because it was filed "well after his convictions became final." So the Commonwealth argues that we too lack appellate jurisdiction to review the trial court's ruling.

---

[2] Under Rule 4:15(d), "Oral argument on . . . any motion in any case where a *pro se* incarcerated person is counsel of record will be heard orally only at the request of the court." "Courts have broad discretion to determine how much, if any, oral argument is appropriate in a given case." *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 448 (2d Cir. 1995).

Code § 17.1-406(A) provides that "[a]ny aggrieved party may appeal to the Court of Appeals from any final conviction in a circuit court of a traffic infraction or a crime." "In a criminal case, the final order is the sentencing order." *Dobson v. Commonwealth*, 76 Va. App. 524, 528 (2023) (quoting *Johnson v. Commonwealth*, 72 Va. App. 587, 596 (2020)). "A final order generally remains under the trial court's control for 21 days." *Id.* (citing Rule 1:1(a)). "Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1." *Id.* at 529 (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002)).

Appeals to this Court under Code § 17.1-406(A), however, are not limited to those challenging the final conviction alone. Subsection A permits an appeal to this Court "from final criminal convictions *and from action on motions filed and disposed of while the trial court retains jurisdiction over the case*." *Green v. Commonwealth*, 263 Va. 191, 194 (2002) (emphasis added) (quoting *Commonwealth v. Southerly*, 262 Va. 294, 299 (2001)). Such appeals fall within our criminal appellate jurisdiction over rulings that "are part of a process that 'is purely criminal in nature.'" *Id.* (quoting *Southerly*, 262 Va. at 299).[3]

Various criminal statutes permit the circuit court to amend or modify the sentencing order more than 21 days after entry, thus permitting a defendant aggrieved by the circuit court's ruling

---

[3] *See Southerly*, 262 Va. at 299 ("[I]t is the nature of the method employed to seek relief from a criminal conviction and the circumstances under which the method is employed that determine whether an appeal is civil or criminal in nature. If the method consists of an appeal from the conviction itself or from action on motions filed and disposed of while the trial court retains jurisdiction over the case, the appeal is criminal in nature. But when . . . the relief requested by way of a motion to vacate is a declaration that the trial court lacked the jurisdiction to take the action sought to be vacated and the motion is not filed until after the conviction has become final, then the motion and the appeal from the trial court's action thereon are both civil in nature.").

to invoke our appellate jurisdiction under Code § 17.1-406(A). For instance, Code § 19.2-303 empowers the circuit court to suspend or modify a criminal sentence "at any time before the sentence has been completely served," if the defendant has not yet been transferred to the Virginia Department of Corrections, or otherwise "within 60 days of such transfer" to the Department. The "statute controls over Rule 1:1 in determining whether the trial court had jurisdiction to consider [the defendant's] motion." *Dobson*, 76 Va. App. at 530 n.6. "Another statutory exception to the 21-day finality rule" is Code § 19.2-303.01, which authorizes the circuit court on the motion of the Commonwealth's Attorney to reduce the sentence of "a defendant who, 'after entry of the final judgment order, provided substantial assistance in investigating or prosecuting another person.'" *Id.* at 532 (quoting Code § 19.2-303.01).

Likewise, under the circumstances set forth in Code §§ 19.2-306(A) and -306.2, a circuit court may "revoke the suspension of sentence for any cause the court deems sufficient that occurred *at any time* within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A) (emphasis added). A defendant aggrieved by the circuit court's determination may invoke this Court's appellate jurisdiction under Code § 17.1-406(A) even though more than 21 days have elapsed from the original sentencing order. *Green*, 263 Va. at 194. "Because [a defendant's] appeal of the revocation order is an appeal from an action taken while the circuit court retained jurisdiction over his sentence . . . , his appeal lies within the Court of Appeals' jurisdiction under Code § 17.1-406(A)." *Id.* at 195.

Similarly, the circuit court that imposed the sentence "retains the continuing authority to consider matters pertaining to a defendant's payment of costs." *Ohree v. Commonwealth*, 26 Va. App. 299, 310 (1998) (citing Code §§ 19.2-354, -358). Thus, "a trial court possesses the implicit authority to reconsider and modify, upon its own motion or the motion of one of the parties involved, its order concerning the installment or deferred payment of costs." *Id.*

A similar grant of continuing jurisdiction is clear in Code § 19.2-354(C)(ii), which allows the circuit court to "provide an option" for community-service work to count toward the defendant's fine or costs "during imprisonment." Thus, the circuit court here had jurisdiction to consider Vanmeter's motion requesting that the court let him offset his costs obligation with community-service credit. And because the circuit court had jurisdiction over Vanmeter's motion, we have appellate jurisdiction over his timely appeal to review the circuit court's decision rejecting his claim on the merits.[4]

### B. Work for the Virginia Department of Corrections is not community-service work under Code § 19.2-354(C)(ii).

Vanmeter is not the first inmate to argue that his work for the Virginia Department of Corrections should be counted as "community service work" under Code § 19.2-354(C)(ii) to offset his fine or costs. Inmates have "regularly" made such requests since the statute was amended in 2020. 2022 Op. Va. Att'y Gen. 35, 36 (No. 22-007). "The inmates performing such work request that they receive credits against their fines and costs in the amount of the difference between their rate of pay and the minimum wage." *Id.* For his part, Vanmeter used a pre-printed form in which he filled in by hand his identifying information and the name of the prison, circling the "DOC pay rate" he was receiving at the time.

The Attorney General noted at the outset of his 2022 opinion that it was an open question whether a prisoner's paid work for the Virginia Department of Corrections could be considered "community service work." *Id.* at 37. "Community service work is typically defined as '[s]ocially valuable work performed without pay,' leading to doubt about whether duties performed by inmates inside a correctional institution and remunerated in any monetary amount

---

[4] Because we have jurisdiction over Vanmeter's appeal under Code § 17.1-406(A) (governing criminal appeals), we need not consider whether we would have appellate jurisdiction under Code § 17.1-405(A)(3) (governing appeals from final orders in civil cases) if Vanmeter's motion were characterized as "civil" in nature. *See* note 3 *supra*.

can be classified as community service work." *Id*. (alteration in original) (footnote omitted) (quoting *Community Service*, *Black's Law Dictionary* (11th ed. 2019)). The Attorney General assumed without deciding that the inmate's work could qualify as community-service work. *Id*.

Even so, the Attorney General opined that an inmate's work at the prison that houses him does not qualify for community-service credit toward fines or costs because it is "not performed pursuant to any of the six programs specified in § 19.2-354(C)(ii)." *Id*. "While it is not binding on this Court, an [o]pinion of the Attorney General is 'entitled to due consideration.'" *Beck v. Shelton*, 267 Va. 482, 492 (2004) (quoting *Twietmeyer v. City of Hampton*, 255 Va. 387, 393 (1998)).

We agree with the Attorney General that an inmate's work for the Virginia Department of Corrections does not qualify under any of the six community-service programs specified in Code § 19.2-354(C)(ii). "[W]hen the language in a statute is clear and unambiguous, the courts are bound by the plain meaning of that language." *Earley v. Landsidle*, 257 Va. 365, 370 (1999). Subsection (C)(ii) makes clear that community-service credit is available "in accordance with" only six statutes: Code §§ "19.2-316.4, 53.1-59, 53.1-60, 53.1-128, 53.1-129, or 53.1-131." None of those statutes covers work for the Virginia Department of Corrections in the prisons where inmates are housed.

> Indeed, for all practical purposes, work performed by an inmate while inside a state correctional center could not be performed under § 19.2-316.4 (community corrections alternative program), § 53.1-60 (state work release programs), § 53.1-128 (local prisoner workforces), or § 53.1-131 (local work release programs), because these programs either do not apply to inmates in state correctional centers, or do not apply to work performed inside a state correctional center. In addition, § 53.1-129 (prisoner work by judicial order) and § 53.1-59 (prisoner public works projects) appear to apply primarily, or perhaps even exclusively, to work performed outside a correctional facility.

2022 Op. Va. Att'y Gen. at 38 n.8.

The Attorney General correctly concluded that by specifying the six programs under which an inmate could earn community-service credit, the text of Code § 19.2-354(C)(ii) shows that credit is *not* available for any other type of community-service work. *See id.* at 37 (applying the *expressio unius est exclusio alterius* canon).[5] That inference jibes with the drafting history. As originally introduced, the bills that amended Code § 19.2-354(C) permitted credit for any community-service work during imprisonment. HB 277 (Jan. 8, 2020); SB 736 (Jan. 8, 2020). But that general language was altered in committee to specify that credits are available "in accordance with" the six specified statutes. *See* HB 277 (Jan. 22, 2020); SB 736 (Jan. 29, 2020). Those six programs are thus the only ones that qualify for community-service credits under the statute.

CONCLUSION

The trial court had jurisdiction to consider Vanmeter's claim. But the trial court correctly found that Code § 19.2-354(C)(ii) does not entitle inmates to offset their fines or costs with community-service credits for work performed for the Virginia Department of Corrections at the prisons that house them.

*Affirmed*

---

[5] The Latin translates as "the express mention of one thing excludes all others." *Fisher v. Tails, Inc.*, 289 Va. 69, 75 (2015). "This maxim provides that mention of a specific item in a statute implies that omitted items were not intended to be included within the scope of the statute." *Turner v. Sheldon D. Wexler, D.P.M., P.C.*, 244 Va. 124, 127 (1992); *see also City of Hampton v. Williamson*, ___ Va. ___, ___ (June 8, 2023) ("A single statute that specifically mentions only X, Y, and Z can be reasonably presumed (though subject to rebuttal) to exclude A, B, or C.").